## CASE NO. 15-15594-C

## UNITED STATES COURT OF APPEALS

## ELEVENTH CIRCUIT

**Sherrie Hampton-Muhamed, Appellant**
**vs.**
**James B. Nutter & Co., et al., Appellees**
**Ronald R. Wolfe & Assocs.,P.L., et al, Appellees**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## CASE NO. 8-15-CV-00608-JDW-TGW

## APPELLANTS APPEAL BRIEF

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
Phone: (404) 786-6291
Fax: 770-978-0207
cmrsinc@comcast.net

## APPELLANT'S AMENDED CERTIFICATE OF INTERESTED PARTIES

The Plaintiff/Appellant, Sherrie Hampton-Muhamed, certifies that the following is a complete list of the trial judge, attorneys, associations of persons, firms, partnerships or corporations known to her that could have an interest in the outcome of this case as defined by 11th Cir. Local Rule 26.1-1:

**Name: Role in Case:**

Anthousis, Julie  - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Bank One Trust Company, N.A.

Barto Hill, Suzanne - Attorney for Defendants and Appellees, Member of Rumberger, Kirk & Caldwell Law Firm

Cooper, Clarence- Senior District Judge United States District Court of Northern District of Georgia

Croteau, Amanda – Attorney with Ronald R. Wolfe & Assocs. , Defendant and Appellee

Ellis, Damon M.– General Counsel for  Ronald  R. Wolfe & Assocs.

Federal Housing Administration

GNMA REMIC TRUST 2003-099

Government  National Mortgage Association

Gowen, Kevin Richard – Attorney for  Defendants and Appellees , Member of Rumberger, Kirk & Caldwell Law Firm

Hampton-Muhamed, Sherrie -Plaintiff and Appellant

Hannon, Frances- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Holley, William J. II- Attorney for Wolfe Defendants , Member of Rumberger, Kirk & Caldwell

Hummel, Brian R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Huey, Bruce – Vice President of James B Nutter & Co., Defendant and Appellee

Ivanov, Ivan – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

James B Nutter and Company, Defendant and Appellee

JP Morgan Chase Bank

JP Morgan Securities, Inc.,  name change to JP Morgan Securities, LLC, subsidiary of JP Morgan Chase & Co.

Jones, Victoria S. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Lewis, Rhonda K. – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Marks, Matthew – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

McCaffrey, William – Securitization Analyst

Moravecky, Sabrina - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Nutter, James B. Jr.- CEO James B Nutter & Co., Defendant and Appellee

Phillips, John J. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Pidala, Andrea D. - - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Pitzner, Al – Vice President of Compliance for James B Nutter & Co., Defendant and Appellee

Ronald R. Wolfe & Associates, P.L., is Law Firm,  Defendant and Appellee

Rumberger, Kirk & Caldwell Law Firm for Appellees and Defendants

Safeguard Properties, LLC- 7887 Safeguard Cir, Valley View, OH 44125

Schneider, Robert F.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Tilka, Katherine R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Ugaz, Luis F. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

United States Housing and Urban Development

Walker, Linda T., Magistrate Judge United States District Court of Northern District of Georgia

Ward, Keith, CFO of James B Nutter & Co., Defendant and Appellee

Whittemore, James D. – U.S. District Judge,  United States District Court, Middle District of Florida, Tampa

Wolf, Matthew D. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Wolfe, Ronald R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Respectfully resubmitted this 18th day of  April, 2016,

All Rights Retained Without Prejudice

## STATEMENT OF ORAL ARGUMENT

Appellant Sherrie Hampton-Muhamed("Hampton") is willing to appear for any

oral argument that this Court deems necessary or helpful

in adjudicating the issues.

## CERTIFICATE OF SIZE AND STYLE

This brief is written in 14 point Times New Roman using Microsoft Word,

converted to Adobe PDF.

iv

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PARTIES…………………..…………….. i

STATEMENT REGARDING ORAL ARGUMENT………………………… iv

CERTIFICATE OF SIZE AND STYLE…………………………………… iv

TABLE OF CONTENTS………………………………………………… v

TABLE OF AUTHORITIES…………………………………………...vii

STATEMENT OF JURISDICTION…………………………………… 1

STATEMENT OF THE ISSUES………………………………………… 2

STATEMENT OF THE CASE………………………………………….4

    A. Brief Overview……………………………………………… 6
    B. Factual and Procedural Details ………………………………… 7

II.  STANDARD OF REVIEW……………………………………… 11

III. ARGUMENTS AND AUTHORITIES……………………………… 8

    A. The District Court erred and deprived Appellant of her
       Due process rights when it granted a Motion to Dismiss
       with Prejudice………………………………………….…... 15

    B. The District Court erred by basing the Dismissal with
       Prejudice on a letter that Appellant did not base any of
       her claims on and would not even qualify as a violative
       letter pursuant to the FDCPA and CFPB……………………..,,,18

v.

C. The NDGA Court erred in transferring venue to MDFL
when all of the violations occurred in Georgia and Appellant
resides in Georgia and is under strict doctor's orders
not to travel more than thirty (30) minutes from her home......... 23.

D. The District Court erred by claiming that Appellant
did not state a claim..................................................... 26.

E. Appellees have agreed to all of Appellant's claims on the record,
agreed to cover all of her expenses for the continuation of the
legal  matters and have no evidence to prove otherwise.
Hampton is a consumer as defined for relief.......................... 30.

CONCLUSION.................................................................... 34

CERTIFICATE OF COMPLIANCE...................................... 37

CERTIFICATE OF FILING AND SERVICE......................... 37

## **STATEMENT OF JURISDICTION**

A. Jurisdiction of the District Court. The Northern Georgia District Court, Atlanta had subject matter jurisdiction over this matter as Appellant served all Defendants properly, Nutter does business in Georgia and Wolfe was allegedly hired by Nutter.  All of the Defendants using U. S. Mail in interstate commerce came into Georgia in attempts to collect an alleged debt and where Consumer lived and was damaged. All of the action was brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. and the Real Estate Settlement Procedures Act 12 U.S.C. §2601("RESPA".) on a Federal Question but now could also be for Diversity of the Parties due to the amount of damages. This case was transferred to the Middle District of Florida, Tampa Division without all of the parties consent.

B. Jurisdiction of this Court. This Court has jurisdiction over this appeal. The appeal is from a final order entered by the Middle District Court of Florida, Tampa granting the Motion To Dismiss with Prejudice of Defendants/Appellees, James B Nutter & Co., et al (hereafter Nutter) and Ronald R. Wolf & Assocs. PL, et al (hereafter Wolfe).

C. Filing Dates of This Appeal. This appeal was timely filed. On November 18, 2015 judgment was entered in favor of Nutter & Wolfe pursuant to the District Court's order granting the Motion to Dismiss with Prejudice, also filed on

November 18, 2015. Plaintiff/Appellant's ("Hampton") Notice of Appeal was filed on December 16, 2015, and receipt of fees was filed on January 14, 2016.

D. This case is an appeal from a final order, which was the Order granting Motion to Dismiss with Prejudice in favor of Nutter and Wolfe, on the dates set forth in the preceding paragraph. The granting of this motion disposed all of the parties' claims.

## STATEMENT OF THE ISSUES

1.      The District Court erred and deprived Appellant of her due process rights when it granted a Motion to Dismiss with Prejudice.  The court was deprived of Subject Matter Jurisdiction to dismiss a *pro se* litigant's petition without first informing the pro se litigant of defects in the Pleading and opportunity to repair.

2.      The District Court erred by basing the Dismissal with Prejudice on a letter that Appellant did not base any of her claims on and would not even qualify as a violative letter pursuant to the FDCPA and CFPB. A cause of action does not become complete and present for statute of limitations purposes until the Plaintiff can file suit and obtain relief.

3.      The NDGA Court erred in transferring venue to MDFL when all of the violations occurred in Georgia and Appellant resides in Georgia and is under

strict doctor's orders not to travel more than thirty (30) minutes from her home. In violation of 28 USC 1404(a) and 15 USC 1692i (2)(b), Appellees forced Appellant to go outside of her jurisdiction, where she lives and was damaged, to defend her claim and property.

4.    The District Court erred by claiming that Hampton did not state a claim  for relief.    Neither Nutter nor Wolfe conducted an investigation that was reasonable under the circumstances, as required by 15 USC 1692, *et. seq.*, Fair Debt Collections Practices Act, F.R.C.P. 11 and F.R.E. to bring a legitimate claim against Appellant and prove that she could not make a claim upon which relief could be granted.

5.    The District Court erred in determining that there is no controversy. Appellees have agreed to all of Appellant's claims on the record and agreed to cover all of her expenses.

## STATEMENT OF THE CASE

Appellant, Sherrie Hampton-Muhamed ("Hampton") sued Appellees, James B.Nutter & Co., Bruce Huey, James B. Nutter, Jr., Al Pitzner, Keith Ward (hereaftercollectively "Nutter") and their attorneys Ronald R. Wolfe & Assocs., PL, Amanda Croteau, Ivan Ivanov, Julie Anthousis, Katherine Tilka,, Matthew Marks, Matthew Wolf, Rhonda Lewis, Robert Schneider, Ronald R. Wolfe, Victoria Jones, Andrea D. Pidala, Brian Hummel, Sabrina Moravecky, Frances Hannon, John Phillips, Luis F. Ugaz (hereafter "Wolfe") for violations of the Fair Debt Collection Practices Act (15 U.S.C. 1692) et. Seq. and the Real Estate Settlement Procedures Act as follows:

FDCPA Violations:

Hampton received multiple phone calls from Nutter starting around March of 2012, telling her she was responsible for the payments on the estate of her deceased brother or they would steal her family home. The first letter she received was a form letter from James B. Nutter & Co.    It gave her no information other than Wolfe would be the attorney collecting the alleged debt.    The letter from Wolfe was on attorney letterhead, but kept saying they were attempting to collect a debt.    Hampton disputed the debt from the debt collector/attorney timely requesting the required validation after Nutter obtained verification from the creditor.  Her letter stated that, if she did not receive the mandatory information in

compliance with federal law,  Nutter was agreeing that there was no valid debt and they would agree to pay all of her costs to settle the matter. (15 USC 1692g(b)

## RESPA Violations:

Hampton became administrator of her brother's estate upon his death September, 2008.  She contacted Nutter to get information to file the final taxes with IRS for the estate and obtain escrow information.  To this day Nutter refused to send the requested loan information including the initial loan, escrow information, the name and contact for the creditor and the full accounting of the alleged debt. Nutter also refused her offer to tender full payment of the alleged loan (Fl. St. 673.3011).  The CFPB has made it very clear to the servicers/debt collectors that successors in interest, ie. the heir, executor of the estate is to be treated within the law as if they were dealing with the borrowers and comply with all federal and state regulations, as well with the stipulations in the contract.

Appellants claim for damages has always been about the behavior and tortious conduct of appellees and their agents.   Appellees, through the abuse of process,  having no rights, title or authority, barred by statute of limitations, intentionally and willfully continue attempts to collect an alleged debt and harm Appellant in Georgia.   Hampton contends that when the lower court dismissed the Motion with prejudice, Hampton was denied her due process by misapplication of the law, rules of court, rules of evidence and case law.  A legitimate claim was

stated that no controversy existed, leaving genuine issues of material fact to be

adjudicated and damages assessed in favor of the Appellant.

## I.

## FACTUAL AND PROCEDURAL OVERVIEW OF THE CASE

### A.    Brief Overview

Nutter filed an acceleration letter asking for $93,953.02, then filed a

Complaint to collect a debt for $91,263.16 against Hampton on November 7, 2012.

The Complaint alleged that Hampton signed a contract with Nutter when, in fact, it

was Hampton's brother who allegedly signed a contract.  Hampton's brother has

been deceased since September 2008 and the debt was discharged then.  Hampton

was the executor of his estate.

On November 5, 2013, Hampton filed a Complaint in the United

States District Court for the Northern District of Georgia ("NDGA") on November

5, 2013, Case No. 1:13cv-03659-LTW-CC against Nutter and Wolfe.  There were

multiple parties because it appeared someone different got involved any time a

pleading or notice was done.  Prior to serving any of the defendants, Hampton

amended her Complaint (entered 5/6/14) and served all defendants with the

Amended Complaint only.  On March 19, 2015, NDGA issued an Opinion where

they refused to grant Nutter and Wolfe's Motions to Dismiss, but the NDGA did

transfer venue to the Middle District of Florida (MDFL). Hampton immediately filed an interlocutory appeal (April 6, 2015) based on the change of venue. While that appeal was ongoing, Nutter and Wolfe filed Amended Motions to Dismiss in the MDFL. Hampton did not respond to the Amended Motions for several reasons: 1) she had filed an appeal and did not believe the MDFL had jurisdiction to entertain the Motions to Dismiss; 2) she believed that if she responded to the Motions to Dismiss, she would acquiesce to the venue transfer that she objected to; and 3) on May 5, 2015 the MDFL had made a statement that all of Hampton's issues would be dealt with on appeal so Hampton believed the MDFL had divested itself of jurisdiction.

On November 18, 2015 the MDFL issued an order dismissing Hampton's Complaint *with prejudice*. The finding of facts and conclusions of law have eluded appellant, if they are in the court order, along with rest of the confusion surrounding this whole case. There is a definite appearance of bias by not allowing appellant to amend and cure any deficiencies in her only claim when appellees were able to amend their motion.

The instant appeal followed.

### B.    Facts and Procedural Details

Ms. Hampton-Muhamed is an unsophisticated consumer as defined by 15 USC§ 1692a(3) and as executor of the estate, who filed a Complaint for violation

of federal statutes (FDCPA) (after abuse, harassment and oppression along with criminal activity) .This claim was filed against appelleesJames B. Nutter & Co. for suing her for a non-existent debt. This alleged debt was discharged in 2008 upon Hampton's brother's death and was never validated. All debt collection activity in Georgia was not halted after Hampton disputed the debt, as required by law (15 U.S.C.1692g(b)). Hampton amended the Complaint before service was affected on all parties.   Appellees misled the court into believing that Hampton executed the note and mortgage and was in default, which the court appeared to depend on for their order.

In August 2013, Appellees responded with Motions to Dismiss for Lack of Personal Jurisdiction, Transfer of Venue and Failure to State a Claim.   The attorney appellees all filed affidavits with their motion, which were rebutted and no longer have any legal effect.  Appellees agreed with Consumer that they committed tortious acts in Georgia which would give Consumer personal jurisdiction over all of their intentional acts including mail fraud.

Hampton filed memoranda in opposition to the Motions to Dismiss.  The Magistrate Judge issued a Report and Recommendations that the Amended Complaint not be dismissed as Appellee's counsel would lead this Court to believe.  The Magistrate's order (February 20, 2015) (Doc.37) stated Nutter Defendants' Motion to Dismiss should be DENIED as to Hampton's claims

against Nutter and Wolfe both allowing the case to be transferred to the United States District Court for the Middle District of Florida ("MDFL"). Hampton filed Objections to the Report and Recommendations on March 10, 2015. The Objection was based on transfer of venue or the removal to the MDFL. This is a violation of Federal Law, 28 USC 1404(a) (attached as Annex B), as the Law requires consent of ALL parties for removal and violates 15 U.S.C. §1692 (i)(2)(B).

Hampton did not consent to transfer of venue. Hampton could not consent because she is under strict doctor's orders not to travel more than thirty (30) minutes from her home (Annex C). The objection to this order went through pages of case law supporting the objection to transfer of venue (Doc. 39, pgs. 27-28, 30-33). A Non-Consent to transfer was also filed into the court. (Doc. 43) Hampton filed a timely Notice of Appeal to the Eleventh Circuit through NDGA on April 6, 2015, which was accepted by the 11th Circuit. Hampton was given an appeal schedule (Case No. 15-11502C) including a deadline to file her appellate brief. Further, Hampton was granted an extension by the 11th Circuit to file her appeal brief.

As a result of an apparent clerical error, the Appeal proceeded under two appeal numbers, Appeal No. 15-11485B (MDFL) and No. 15-11502C (NDGA). Hampton contends that the MDFL never had jurisdiction because not only did

Hampton not give it to MDFL to rule on the Motion to Dismiss but MDFL also divested the court of jurisdiction. According to Judge Whittemore's first order of May 5, 2015, (Doc.60) he stated "Although an interlocutory appeal does not necessarily completely divest the district court of jurisdiction such that a district court has authority to proceed forward with portions of the case not related to the claims on appeal, Plaintiff's appeal of the Order of dismissal is concerned with the entire merits of Plaintiff's claims....As such, the filing of the Notice of Appeal divested this Court of jurisdiction."

During the time MDFL was requiring Appellant to respond to the Motions to Dismiss she was in appeal. MDFL was void of jurisdiction the entire time the appeal was ongoing. MDFL denied more time to respond and said the case was closed.

Appellant filed a Notice of Illegal Acts into MDFL, reserving her rights along with reporting Nutter's fraud on the court and crimes committed and reported to the police the fact that Nutter had already changed the locks to Hampton's property without having a judgment or any ruling in their favor.

"Plaintiff is not waiving any of her rights to pursue her claim, which appears to include extortion, mail fraud, fraud on the court and conspiracy to steal money, property and liberty. Any attempt to take money, property or liberty under false pretenses is a crime. The Florida Constitution prohibits the court from

allowing taxpayer financial resources to be used in schemes of fraud and extortion and is a theft of honest services - a form of racketeering. Any party in a position of authority that has notice of fraud and does not eradicate the fraud are complicit in the fraud and aiding and abetting after the fact." (Dkt 78) (9/18/15).

      The Notice was never responded to or disputed, except as a bizarre filing, so the facts in the Notice remain as they were acquiesced to.

      Currently in the 12th Circuit Court in Florida, where these debt collectors erroneously started the alleged debt collection, Hampton has a Motion to Dismiss the complaint awaiting assignment of a new judge. Nutter by and through Wolfe have a court ordered subpoena duces tecum that has been outstanding since March of 2013, and three orders from different Judges compelling them to produce discovery to include the account and general ledger statement, receipt for the initial loan, bonds, titles, insurance and trust documents. These orders have been outstanding since 2013, and there is an outstanding order for Contempt of Court and Sanctions that has not been ruled on. Hampton's Counterclaim was granted and she has yet to go to trial.

## II.  **STANDARD OF REVIEW**

Pursuant to S.C.O.T.U.S. and other higher court decisions; Judges are precluded from dismissing a case against a pro se litigant for "failure to state a claim upon which relief can be granted" and/or grant Summary judgment against a pro se litigant. . See Trinsey v. Pagliaro, 229 F. Supp. 647 (D.C. Pa. 1964):  A motion to dismiss for failure to state a claim is an issue of law subject to *de novo* review.  *Solorzano* v.  *First Union Mortg.  Corp.,* 896 So. 2d 847, 849 (Fla. 4[th]DCA 2005).  "To state a cause of action a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." *Samuels* v. *King Motor Co. of Fort Lauderdale,*  782 So. 2d 489, 495 (Fla.  4th DCA 2001) (quoting *Perry .Cosgrove,* 464 So. 2d 664, 665 (Fla. 2d DCA 1985)).   In reviewing motion to dismiss, the court is limited to the four corners of the complaint and must accept facts alleged in the complaint as true. *Id.* at 494.

.In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Plaintiff's pleadings are requested to be construed by "less stringent standards". See *Haines v. Kerner*, 404 U.S. 519-

20, (1972). See also Maclin v. Paulson, 627 F.2d 83,86 (CA7 1980); French v. Heyne, 547 F.2d 994,996 (CA7 1976). Unrepresented litigant should be given a **reasonable opportunity to remedy defects** in his [or her] pleadings if the factual allegations are close to stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). And, of course, the allegations of a complaint are generally taken as true for purposes of a motion to dismiss. Cruz v. Beto, 405 U.S. 319,322 (1972).

Accordingly such pleadings should be held to a less stringent standard than those drafted by licensed, practicing attorneys. Implicit in the right of self-representation is an obligation on the part of any court to make reasonable allowances to protect *unrepresented* litigants from inadvertent forfeiture of important Rights because of any lack of formal legal training. See Traguth v. Zuck, 710 F.2d 90, 95 (2nd Cir. 1983); Hoffman v. U.S., 244 F.2d 378, 379 (9th Cir. 1957); Darr v. Burford, 339 U.S. 200 (1950).

The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Haines v. Kerner, Id. at 556. A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." Id.

Beasley v. Girten, 61 So. 2d 179, 181 (Fla. 1952). Because **dismissal is the ultimate sanction in the adversarial system, it should be reserved for those aggravating circumstances in which a lesser sanction would be appropriate.** The Florida Supreme Court in Kozel v. Ostendorf,629 So. 2d 817, 818(Fla. 1993), identified factors for a trial court to consider "in determining whether dismissal with prejudice is warranted." These six factors are: 1) whether the attorneys [party] disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney[party] has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney [party]offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration. Id.

A trial court's failure to consider the Kozel factors when determining whether dismissal is appropriate "is, by itself, a basis for remand for application of the correct standard." Bennett ex rel. Bennett v. Tenet St. Mary's, Inc., 67 So. 3d 422, 427 (Fla. 4th DCA 2011) (quoting Ham v. Dunmire, 891 So. 2d 492, 500 (Fla. 2004)  Additionally, the **Court cannot base a dismissal on matters outside the four corners of the complaint.** See Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).

### III.

### <u>ARGUMENT</u>

**1.    The District Court erred and deprived Appellant of her due process rights when it granted a Motion to Dismiss with Prejudice.**

Pursuant to the Supreme Court of the United States and other higher court decisions, Judges are precluded from dismissing a case against a *pro se* litigant for "failure to state a claim upon which relief can be granted" and/or grant Summary judgment against a *pro se* litigant at the Motion to Dismiss phase of the litigation without first giving the *pro se* litigant an opportunity to amend the claim.

Nutter and Wolfe presented no evidence to support their Motions to Dismiss. *Trinsey v. Pagliaro*, 229 F. Supp. 647 (D.C. Pa. 1964), "Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment."

This court is to **take mandatory judicial notice** that "Statements of counsel are never facts before any court; factual contentions must be supported by the testimony of at least one witness, competent to testify, who testifies under oath and subject to cross-examination regarding authenticated evidence, absent these proofs, the statements of lawyers are invisible to the court. To conclude otherwise is to discover that defendants have a private, prior agreement with this Court, accomplished by improper influence, to handle these proceedings extra-legally and

extra-judicially."

Appellees' motions to dismiss for failure to state a claim were unsupported by affidavits or depositions. They were also incomplete because they requested the Court to consider facts outside the record which had not been presented in the form required by Rules 12(b) (6) and 56(c).

Hampton, on the other hand, supported her contentions of material fact with testimony and authenticated evidence which was not disputed or impeached in the Motions to Dismiss. In opposition to Hampton's claims, Appellee's counsel offered only conclusions unsupported by evidence or fact witnesses, rendering counsel's motion to dismiss brought under authority of F.R.C.P 12(b)(6) legally insufficient to invoke the Court's authority to act favorably for Appellees.

It could also be argued that to dismiss an action where a serious factual pattern or allegation of a cause of action has been made would itself be violative of procedural due process as it would deprive an unrepresented litigant of equal protection of the law "vis a vis" a party who is represented by counsel. In a fair system, victory should go to a party who has the better case, not the better representation. Hampton clearly stated a claim upon which relief can be granted and supported all of her claims with evidence. Hampton is injured by dismissing her claims with prejudice when the clearly has standing to bring forth her claims.

The burden to show **legal** insufficiency of a petition is on the party moving

for dismissal.  A motion to dismiss for failure to state a claim must separately state each omission or defect in petition- it must impeach the claim; if it does not, the motion shall be denied without hearing.  Here, the Motions to Dismiss did not separately state each omission or defect contained in the petition; and in fact, the Motions to Dismiss went outside the four corners of the Complaint.  A trial court *shall* grant leave to amend a defective pleading if the defect can be remedied; **the duty is mandatory**.

*Pro se* litigants are to be held to a less stringent pleading standard that "professional bar licensed associates." Regardless of the sufficiency of their pleadings, *pro se* litigants are entitled to an opportunity to offer evidence in support of their claims and the court errs where the court dismisses a *pro se* litigant's claim without informing the *pro se* litigant of necessary reparations to their pleadings. See *Haines v. Kerner*, 404 U.S. 519-421 and *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 06/03/1991). See also *Platsky v. C.I.A.* 953 F.2d. 25, *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990); and *Jaxon v. Circle K. Corp.*, 773 F.2d 1138, 1140 10th Cir. 1985).

"The court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also* F. R. C. P. 15(a)(2) ("The court

should freely give leave [to amend] when justice so requires.").

Wherefore, the District Court erred in dismissing Hampton's Complaint *with prejudice* without first giving her an opportunity to amend her claims. The District Court's decision should be reversed and Hampton should be given an opportunity to amend.

**2.    The District Court erred by basing the Dismissal with Prejudice on a letter that Appellant did not base any of her claims on and would not even qualify as a violative letter pursuant to the FDCPA and CFPB.**

The MDFL based its determination that Hampton could not amend her claim because the FDCPA violations stemmed from an October 4, 2012 letter, thus her claims were time barred. This was not a claim Hampton ever made. She did not base her claims of FDCPA violations on the October 4, 2012 letter, nor could she have because a letter is not, in and of itself, a violation.

There are 12 different violations of the FDCPA, the first one being when Nutter refused to validate the debt and, instead, continued to collect the alleged debt (November 7, 2012) by serving a complaint. (15 U.S.C. §1692g(b))

A new case, *Benzemann v. Citibank N.A.*, will dispel the theories of *Maloy v. Philips*, the case the District Court used to support its decision. This Second Circuit case shows how *Maloy* **does not apply** to Hampton's claim. "There have been differing court opinions that the FDCPA claim accrues at one time for the purpose

of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit. However, it is a "general principle of law" that "a cause of action accrues when conduct that invades the rights of another <u>has caused injury. When the injury occurs, the injured party has the right to bring suit</u> for all of the damages, past, present and future, caused by the defendant's acts." (emphasis added) *Leonhard v. United States*, 633 F.2d 599, 11 613 (2d Cir. 1980).

Before Hampton was given a summons and complaint, she had no "complete and present cause of action" against defendants. See *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445–46, 448 (5th Cir. 2013) (in context of allegedly unlawful debt collection suit, holding that plaintiff's cause of action accrues when service is effected, not when he files a lawsuit; "no harm immediately occurs" because of filing alone). Hampton received a Complaint on November 7, 2012, less than one year prior to the filing of the instant matter. Therefore, her actual injury began as of that date.

"Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief. We see no indication in the text of Section 1692k(d) that Congress intended for the FDCPA's statute of limitations to begin to run before an FDCPA plaintiff could file suit. We find it implausible that the Congress that passed the FDCPA intended to create such an anomalous result."

*Benzemann* at \*8-9.

In *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), the Tenth Circuit expressed a similar concern in the context of allegedly unlawful debt collection suits. *Id.* at 1113.  In holding that an FDCPA violation "occurs" in that context when the plaintiff is served, as opposed to when the complaint is filed, the court noted that if the statute of limitations began to run when the complaint was filed, the debt collector "could effectively block any action under the federal statute by filing suit and then delaying service." *Id.* at 1114.  Here, there is a similar concern that linking the statute of limitations to the sending of the notice would shorten the already limited amount of time that FDCPA plaintiffs have to file suit."  In this case it also overshadowed responding to the complaint before the 30 days given to dispute the debt.

The Court also found **no indication in the text of the FDCPA that Congress intended the statute of limitations to run before an FDCPA plaintiff could file suit.**  Once the certified request for dispute of the alleged debt collection was received, Appellee could have stopped the service processor until they obtained sworn verification from the original creditor and sent that along with their validation to Hampton, complying with 15 USC §1692g(b).

In addition, in *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F. 3d 440 (5th Cir. 2013) and *Johnson v. Riddle*, 305 F. 3d 1107 (10th Cir. 2002), other

federal appellate courts held that an FDCPA violation occurs when a plaintiff is served, not when a complaint purportedly violating the statute is filed.

In *Serna*, as in *Johnson*, the court held that the FDCPA violation occurred when the debtor was served, not when the allegedly unlawful lawsuit was filed, 732 F.3d at 445. In reaching this conclusion, the *Serna* court stressed that tying the running of the statute of limitations to an event that would give the debtor notice of an injury "best served" the FDCPA's "remedial nature" because this approach "(1) most directly focuses on the harm Congress sought to remedy through the FDCPA, and (2) best preserves the availability of relief for consumers." *Id*. The court noted that "tying a violation to the mere filing of a complaint [or a notice] does not serve the statute's remedial purpose," because "no harm immediately occurs" upon the filing of the complaint [or sending a notice]. *Id*. The court further noted that its approach "ensures that a consumer has adequate opportunity to seek relief under the FDCPA." *Id*. at 446.

Here, the sending of the notice is analogous to the filing of a complaint. In both cases, one might argue that the debt collector's conduct is a "violation" of the FDCPA in and of itself. But the *Serna* and *Johnson* courts nevertheless held that the FDCPA violation did not "occur" for purposes of §1692k(d) until the plaintiff had a complete cause of action under the FDPCA and notice of the violation, i.e., when the defendant was served.

We recognize that, in the context of FDCPA claims premised on the sending of unlawful debt collection notices, two of our sister circuits have held that the FDCPA violation "occurs" when the notice is mailed, not when it is received. *See Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261(8th Cir. 1992). But the concerns that animated the *Maloy* and *Mattson* decisions are not present in this case.

Those courts reasoned that tying the statute of limitations to the date of mailing was necessary because (1) mailing is the debt collector's last opportunity to comply with the FDCPA and (2) the date of the mailing is easy to determine and ascertainable by each party, yielding a rule that is easy to apply. *Maloy*, 64 F.3d at 608; *Mattson*, 967 F.2d at 261. But in the context of serving a complaint, the mailing of the notice is not the "last opportunity" for a debt collector to comply with the FDCPA. (Wolfe had a last opportunity to comply with the FDCPA after he sent the debt collection notice by contacting the process server and requesting that it not be served). *See Johnson*, 305 F.3d at 1114 n.4 (noting that filing suit is not "last opportunity" to comply with FDCPA because creditor could contact an intermediary—the process server—and request that it not serve the debtor); *Serna*, 732 F.3d at 448 n.16 (same). Moreover, it is no easier to ascertain the date of the mailing of the notice than the date of the action itself, which one can ascertain by simply looking at records and affidavits. Thus, the reasoning that the *Maloy* and

*Mattson* courts applied in the context of debt collection notices is simply inapplicable here.[1]

In the instant matter, the FDCPA violation did not "occur" until Hampton was served with the lawsuit on November 7, 2012 and within the one year statute of limitations, because it was only then that Hampton had a complete cause of action and notice of the FDCPA violation, §1692 g(b).

Wherefore, the District Court erred in basing the Dismissal *with prejudice* on a letter that did not injure Hampton. The District Court's decision should be reversed.

**3.    The NDGA Court erred in transferring venue to MDFL when all of the violations occurred in Georgia and Appellant resides in Georgia and is under strict doctor's orders not to travel more than thirty (30) minutes from her home.**

Under 28 U.S.C. § 1391(b), venue is proper in the district where plaintiff resides AND in the district in which the claim arose. In both cases, that venue is Georgia.

Whether the order to transfer was based on deemed lack of personal

---

[1] More fundamentally, we question whether these cases meaningfully confront the rule that "[u]nless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry*, 522U.S. at 201. Neither case contains an acknowledgement that, under the court's reading of the statute, the plaintiff's limitations clock was ticking before the plaintiff was able to file suit. For this reason, too, we think our disposition of this case sound despite the results reached in *Maloy* and *Mattson*.

jurisdiction, the tortious conduct by appellees mandates jurisdiction over them, specific or general. Appellees have not denied or disputed Hampton's allegations to the intentional and willful tortious conduct in any of their pleadings. All affidavits by Wolfe have been rebutted and have no legal effect. Nutter is a foreign corporation, licensed in Missouri and does business in Georgia. Nutter should be expected to be haled into court wherever the conduct was directed. Nutter initiated the action, to include hiring Florida attorneys, when the FDCPA and CFPB regulates suing where the consumer lives. Consumers should not be expected to pay for the debt collector's mistakes or their unwillingness to know and comply with the law.

"A threat to sue a consumer for a debt in a distant location where the consumer did not reside or engage in the transaction would be contrary to 15 U.S.C. § 1692i(2)(b)." The majority of FDCPA cases have held that a plaintiff's claim arises in the district in which the plaintiff received the offending communication or debt collection letter. See *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2nd Cir.1992) (venue in FDCPA case was proper where alleged debtor resided and where debt collector's demand for payment was forwarded); *Paradise v. Robinson and Hoover, et. al*, 883 F.Supp. 521 (venue proper where plaintiff received debt collection letter); *Russey v. Rankin,* 837 F.Supp. at 1105 (consumer's receipt of collection notice was substantial part of events giving rise to claim under

FDCPA); *Lachman v. Bank of Louisiana in New Orleans*, 510 F.Supp. 753, 760 (N.D.Ohio 1981) (venue in FDCPA case was proper where plaintiff received debt collection letter because that is where the injury occurred).

The court's reasoning in *Sluys v. Hand*, 831 F.Supp. 321, is persuasive: "Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the Act, suits may be brought where the debtor receive[s] the communications. Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned." Id. at 324; see also Russey, 837 F.Supp. at 1105 (exercise of its discretion to transfer venue "would frustrate the Congressional goal that the FDCPA be primarily enforced through the efforts of the aggrieved consumer") (citations and quotations omitted); Vlasak v. Rapid Collection Systems, Inc., 962 F.Supp. 1096, 1102-03 (N.D.Ill.1997) (same).

The Consumer Financial Protection Bureau has elaborated on the rules surrounding FDCPA and consumer protection rights. They explain that Congress in no way intended for wrongfully sued consumers to have to run around the country to get justice for a debt collector's illegal and abusive acts. In the instant matter, Hampton alleged that Nutter and Wolfe all knew Hampton was a resident of Georgia and that Nutter and Wolfe engaged in wrongful conduct targeting her in

Georgia.

As venue was proper in Georgia where Hampton initially filed her Complaint, venue could only be transferred by consent of all parties (28 USC§ 1404(a)). Hampton did not consent to transfer of venue. In fact, not only did Hampton object to the transfer of venue, but she filed a Notice of Non-Consent to Transfer Venue with the Court (Doc. 43). Hampton could not consent to transfer the venue because she is under strict doctor's orders not to travel more than thirty (30) minutes from her home (Annex C). The objection to this order went through pages of case law supporting the objection to transfer of venue (Doc. 39, pgs. 27-28, 30-33).

Wherefore, because venue was proper in NDGA, the Court erred in transferring venue to MDFL. The venue transfer should be reversed and the case remanded back to NDGA for adjudication on the merits.

**4. The District Court erred by claiming that Appellant did not state a claim for relief.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Among other things, the FDCPA regulates debt collection

communications, prohibits the use of harassing, oppressive, or abusive measures to collect a debt, and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt. 15 U.S.C. §§ 1692c-1692f. For the FDCPA to apply, two threshold criteria must be met: (1) the defendant must qualify as a "debt collector" and (2) the challenged communication must have been made in connection with the collection of a debt. *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1355 (M.D. Fla. 2012); *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012); see also 15 U.S.C. § 1692c (regulating communications "in connection with the collection of any debt"); 15 U.S.C. § 1692d (prohibiting harassment "in connection with the collection of a debt"); 15 U.S.C. § 1692e (prohibiting the use of false and misleading means "in connection with the collection of any debt").

Hampton exhausted all of her administrative remedies and gave the appellees multiple opportunities to do the right thing and comply with the law. Nothing is frivolous about Hampton's claim, which was only lengthy due to the multiple parties numerous violations of the law, willfully and intentionally. Hampton's hope was that the claim would have enough information to be settled quickly. She certainly does not want to spend any more time in court than is absolutely necessary.

Nutter, a third party debt collector who allegedly hired Wolfe, another third

party debt collector, has already admitted they are debt collectors in their own words. Both NDGA and MDFL agreed that Wolfe and Nutter are attempting to collect an alleged debt. So how is it that Hampton did not state a claim upon which relief can be granted when she stated, with exhibits to support her claim:

1)      *Who* did what (each individual specific act or omission of each appellee that had a duty and obligation to respond and comply with the law);

2)      *What* did they do (never obtained consent before contacting Hampton and gave personal, private information to third parties 15 USC1692c;  gave false, misleading and deceptive information to court and consumer §1692 e   about the amount and legal status of the alleged debt1692 e(2)  failure to communicate that an alleged debt is disputed  §1692 e(8); unconscionable means to collect or attempt to collect the alleged debt §1692 f ;  Taken or threatened to unlawfully repossess or disable the consumer's property 1692 f(6); § calls started in March 2012 and failed to send 30-day validation notice within five days of the initial communication 1692g(a) continued collection after the debt was disputed (1692g(b); after six requests, never validated the alleged debt  §1692g(b); allowed the court and Hampton to believe Nutter was a creditor when they admitted they were collecting the alleged debt for investors; § 1692e(2);  did not disclose that any individual is an attorney or that any communication is from an attorney because they said they were a debt collector (attorney cannot be a witness and counsel at the same time)  §

1692e(3) ; threatened that nonpayment of the debt would result in seizure, garnishment, attachment § 1692e(4); threaten to take action that they knew could not legally be taken § 1692e(5) – which is not inclusive.

3)    *When* they did what they did (started in 2012 and is still ongoing and listed specifically for each act or omission);

4)    *Where* they did it (from Missouri and Florida thru U.S. Mail coming into Georgia and in the Sarasota court house);

5) *How* they did it (mailing more than 60 letters and legal documents – litigation is still debt collection as supported by the Supreme Court[2] and CFPB);

6) *Who was damaged* (Hampton and her family);

7) *What damages* were suffered (intentional infliction of emotional distress – Legal Abuse Syndrome, financial costs to defend family estate and prevent Hampton and her family from doing other commerce, loss of revenue, theft of personal property, damage to family home from trespass, aggravation of Hampton's disability creating more medical problems and costs and since this is

---

[2] In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. The Supreme Court has held that the filing of legal proceedings on behalf of a creditor can constitute a debt collection activity.  See Heintz v. Jenkins, 514 U.S. 291, 293–96, 115 S. Ct. 1489, 131 L.Ed.2d 395 (1995) See, *e.g.*, Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or **legal proceedings**").  Further, the Supreme Court has made clear that the FDCPA applies to lawyers regularly engaged in consumer debt collection activity on behalf of creditors, **"even when that activity consists of litigation."** Heintz v. Jenkins, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995).

not concluded, the damages are ongoing); and

8) *What laws* were violated  (Federal Rules 15 USC§ 1692f (1) and f(6).; 12 U.S.C. §2601, Rules of Professional Conduct, refused to comply with court ordered subpoena and judges orders compelling discovery, State laws and maxims of law that professionals should already adhere to).

9) Sherrie Hampton-Muhamed is the only *witness* on the record, competent to testify, can testify under oath and be subject to cross-examination regarding authenticated evidence.

Wherefore, the District Court erred in determining Hampton did not state a claim for relief.  At the very least, the Court should have pointed out the errors and given Hampton a chance to amend her claims and provided findings of fact and conclusions of law to work with on appeal.

**5. Appellees have agreed to all of Appellant's claims on the record, agreed to cover all of her expenses for the continuation of the legal matters and have no evidence to prove otherwise.**

Hampton is a consumer as defined in 15 USC §1692 (a) (3) and 15 USC§ 1692 c(d). Hampton does have a security interest in the property, as evidenced by the Non-Abandonment (# RE257902583-US-NONASI-112513-SHM-001 and Affidavit of Secured Interest  (# RE257902583-US-AOSI-NONASI-112513-SHM-002) filed December 6, 2013 attached to the title in the Sarasota County

APPEAL BREIF CASE NO 15-15594-C              30              FILED 4/18/16

Land Records and the UCC-1 filed in the Gwinnett County Superior Court.

Appellees continue to pursue illegal collection activities after being properly noticed, pursuant to 15 USC §1692c(c), to cease and desist all activity. Appellees had no prior consent to communicate (15 USC §1692c) with Hampton and were barred by statute of limitations. Appellee failed to provide evidence from a court of competent jurisdiction giving them permission to contact Hampton. Appellees only presented Hampton with data from public sources while the alleged debt was supposedly in default, information that was NOT obtained from the original creditor. Nutter officers made the remark because Hampton was not the "borrower" she was not entitled to any information, but she could definitely make the payments and she was not to ask any questions!!

Hampton met all conditions precedent and exhausted all of her administrative procedures/remedies of those explicitly written in Section §1692g of the Fair Debt Collection Practices Act, stating that when an independent debt collector solicits payment, it must provide the consumer with a detailed validation notice before debt collector ever files a claim.(15 USC 1692 g(a)

Hampton communicated on six different occasions to both debt collectors (Nutter & Wolfe), requesting validation of the alleged data, verification from the original creditor, production of a legitimate contract and gave them notice to cease and desist and noticed Nutter to return her stolen property. Nutter hired

Safeguard, the company that changed the locks on Hampton's property in Florida –

a property Nutter did not have any rights to and did not have a judgment in favor

of. "Jenny," an employee at Nutter informed Hampton that she did the work

orders for Safeguard, but refused to give any more details.  Agents for the

Appellees trespassed on Hampton's family home and converted Hampton's

property to their own personal use without her knowledge or consent, and **without**

**a judge's order**.  Hampton gave Nutter and Wolfe ample time on more than one

occasion to respond within the law.  But in violation of FDCPA they refused to

acknowledge that they even received the certified notifications.

Hampton's certified letter debt dispute and validation request dated October

24, 2012 stated:

> "Your failure to satisfy this request within the requirements of the
> Fair Debt Collection Practices Act will be construed as your **absolute**
> **waiver of any and all claims against me, and your tacit agreement**
> **to compensate me for costs and attorney's fees.**  Also, please contact me
> only by mail. .."

Neither Nutter nor Wolfe responded and Hampton sent two more certified

letters to Nutter and Wolfe, one which included a cease and desist (15

U.S.C.§1692c(c)) dated April 30, 2013, which stated:

> "This is a second reminder that your failure to satisfy this request
> within the requirements of the Fair Debt Collection Practices Act will be
> construed as **your absolute waiver of any and all claims against me, and**
> **your tacit agreement to compensate me for costs and legal fees.**"

There are maxims of law that state "**Acquiescence in error takes away the**

right to object to it" and "No one can take advantage of his own wrong."

Since Nutter and Wolfe had a duty and obligation to respond to these certified letters, (based on their own communication stating that they would mail the information requested), there is no way the court had jurisdiction to rule against Hampton when Nutter and Wolfe had blatantly violated federal law, rules and regulations and again bringing fraud upon the court. Nutter and Wolfe have not only agreed that there is no alleged debt for them to collect from Hampton, but they have also agreed to pay all of Hampton's costs for continuing to pursue the debt collection. There is nothing for the court to decide except the damages for Hampton.

> **"In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them."**

OCGA 24, Chapter 4, Section 23 (24-4-23)

> **"Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission."**

OCGA 24, Chapter 3, Section 36 (24-3-36)

The Qualified Written Request, required under RESPA, and Debt Validation Letter are statutory letters giving rise to an obligation to answer and resolve the issue, and Nutter is already in violation. Florida requires debt collectors to send a notice, commonly called a breach letter or demand letter, informing you that your

loan is in default before it can accelerate the loan and proceed with a lawsuit.

The letter must specify: 1) the default 2) the action required to cure the default 3) a date (usually not less than 30 days from the date the notice is given to the borrower) by which the default must be cured, and 4) that failure to cure the default on or before the date specified in the notice may result in acceleration of the debt. Hampton never received this mandatory letter either before they filed the acceleration.

The only answer Nutter could have to avoid sanctions for failing to conform to statute is to say they are not a creditor and therefore they don't have any obligation to answer. This of course prevents them from making any claim as well. Nutter simply failed to comply, meaning **no creditor can seek to collect on a debt without proving the debt is due**. Hampton has asked for a full accounting of the chain of title on the loan and the money received from all parties, (not just the borrower), and it is impossible to state how much of the obligation is due and to whom it is owed. Nutter is not only in violation of RESPA but FDCPA, and as stated above has already agreed with everything Hampton has claimed, agreeing to cover her expenses which should invalidate any attorney's fees being requested for the Consumer to pay.

Wherefore, the District Court erred in concluding that there were no issues in dispute. The decision to Dismiss with Prejudice should be reversed.

## CONCLUSION

Appellant brought suit against appellees after exhausting all administrative remedies and was sued for a debt that does not exist, on a contract that she did not sign, that was time barred by statute of limitations (and never validated as a legitimate alleged debt. The putative decision in violation of 18 U.S.C. §§ 371, 1001, 1341, to wit: property was taken (POLICE REPORTS) to satisfy an unverified, undocumented claim that Hampton was indebted to James B Nutter & Co. The claim rose to a level of "fraud on the court" for reasons that Nutter never proved standing requiring proffering of a valid contract with the court as the *de facto* and *de jure* party in interest and Nutter never proffered the verified business [3]record in the form of the account and general ledger statement, properly authenticated as required at F.R.E. 901(a) and attested to by that party responsible for maintaining the record as required at F.R.E. 601 et seq. and F.R.E. 803.

In the underlying case, the court relied only on statements of counsel which were unsupported by competent testimony or authenticated evidence. The lower courts handling of both the underlying proceedings and the procedurally improper motion to dismiss rise to a blatant denial of due process, a Constitutional mandate. Wolfe joined Nutter in violating 18 U.S.C. §§ 371, 1001, 1341 as well as 26 U.S.C.§ 7214(a)(1)(2)(7)&(8) and the states' equivalents of these federal laws and

---

do so with impunity necessary to perfect their schemes of fraud and extortion by conspiring to file forged[4] (Fl.St. 831.01) documents and repeatedly filing false documents with the intention that the court and Hampton rely on the false documents to the detriment of taking of property to satisfy a false discharged debt.[5]

The trial court erred in granting the Motions to Dismiss without giving Hampton a chance to amend her petition; by basing their dismissal on a letter that was not a violation pursuant to the FDCPA and not a claim that Hampton had made in her complaint; by claiming Hampton's claims were time barred due to statute of limitations when it was Appellee's debt collection and continued debt collection that was barred by statute of limitations(Fl.St.733.710, Fl. St. 95.11(3)(p)(k) and 95.11(6); by transferring venue outside of Hampton's state, especially given that Hampton is under strict doctor's orders not to travel more than 30 minutes from home.

As such, the lower court's decision should be reversed and Hampton's Complaint should be reinstated to correct any errors in her claim and venue returned to Northern District of Georgia, Atlanta OR, since there is no controversy,

---

[4] According to Chapter 831.01 of the most recent set of Florida state statutes, anyone who commits forgery, i.e., "falsely makes, alters, forges or counterfeits," any document with legal standing, or who utters, passes or. tenders fake banknotes, is thereby guilty of having committed a third degree felony. These third degree felonies are punishable by up to 5 years in prison and carry a fine of up to $5,000

[5] **831.02   Uttering forged instruments.**—Whoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in s. 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

the appellate court could assess Hampton's damages and relieve the courts of this unnecessary litigation.

## CERTIFICATE OF COMPLIANCE

I hereby certify that my word processing program,  Microsoft Word counted 9,088 words in the foregoing brief exclusion of the portions excluded by Rule 32(a)(7)(B)(iii).

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of  April, 2016, a true and correct copy of the foregoing Amended Certificate of Interested Parties was mailed to all parties as noted below.

*Priority Mail #* 9505 5000 3323 6109 0007 26
RUMBERGER, KIRK & CALDWELL, P.A.
Suzanne Barto Hill, Esquire,  Florida Bar No. 0846694,  shill@rumberger.com
Kevin R. Gowen, II, Esquire, Florida Bar No. 0900621, kgowen@rumberger.com
Post Office Box 1873,   Orlando, Florida 32802-1873

**UNITED STATES DISTRICT COURT OF APPEALS FOR THE ELEVENTH CIRCUIT, 56 Forsyth St. N.W., Atlanta, GA 30303**

And with the Clerk of Court through US Mail, Priority Mail #  9505 5000 3323 6109 0007 19  US, and not filed electronically as Plaintiff is excused from filing this document or thing electronically by Court order.

Respectfully submitted,          All Rights Retained  Without Prejudice
                                 Without Recourse


_____
Sherrie Hampton-Muhamed
4329 Donerail Dr.,
Snellville, GA 30039
(404) 786-6291
cmrsinc@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April, 2016, a true and correct copy

of the foregoing Amended Certificate of Interested Parties was mailed to all parties

as noted below.

    *Priority Mail #* <u>9505 5000 3323 6109 0007 26</u>
RUMBERGER, KIRK & CALDWELL, P.A.
Suzanne Barto Hill, Esquire, Florida Bar No. 0846694,
shill@rumberger.com
Kevin R. Gowen, II, Esquire, Florida Bar No. 0900621,
kgowen@rumberger.com
Post Office Box 1873, Orlando, Florida 32802-1873
Telephone: (407) 872-7300     Telecopier: (407) 841-2133

**UNITED STATES DISTRICT COURT OF APPEALS FOR THE
ELEVENTH CIRCUIT**, 56 Forsyth St. N.W., Atlanta, GA 30303

And with the Clerk of Court through US Mail, Priority Mail # <u>9505 5000 3323
6109 0007 19</u> US, and not filed electronically as Plaintiff is excused from filing
this document or thing electronically by Court order.

    All Rights Retained Without Prejudice
    Without Recourse
    Respectfully submitted,

    Sherrie Hampton-Muhamed
    4329 Donerail Dr.,
    Snellville, GA 30039
    (404) 786-6291
    cmrsinc@comcast.net