CASE NO. 15-15594-C

15-15594

# UNITED STATES COURT OF APPEALS

## ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 15 2016
David J. Smith
Clerk

**Sherrie Hampton-Muhamed, Appellant**

vs.

**James B. Nutter & Co., et al., Appellees**
**Ronald R. Wolfe & Assocs.,P.L., et al, Appellees**

# APPEAL FROM THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# CASE NO. 8-15-CV-00608-JDW-TGW

## APPELLANT'S REPLY BRIEF

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, GA 30039
Phone:  (404) 786-6291
Fax:  770-978-0207
cmrsinc@comcast.net

# **TABLE OF CONTENTS**

Certificate of Interested Persons                                                                i

Statement Regarding Oral Argument                                              vi

Table of Authorities                               .                                           vii

Mandatory Judicial Notice                                                                    1

I.  INTRODUCTION                                                                             3

II.  RESTATEMENT OF FACTS AND LAW                                     4

    A. Whether the NDGA erred or abused its discretion in transferring
       this consumer's claim to MDFL, another District and another
       STATE when the LAW states that transfer can only be done
       upon consent of ALL parties and CFPB states to protect
       consumers collection can only be done where this consumer
       lives under 15 USC1692(i).                                                     6

    B. Whether the NDGA and MDFL abused its discretion by not reviewing
       any facts of the case to prove that there could be no foreclosure and there
       was no creditor to foreclose.  Appellees cannot bring a foreclosure action
       or any action against consumer.                                          10

    C. It is a violation of FDCPA to not make consumer aware at the time they
       attempt to collect the debt that the alleged debt is beyond the statute of
       limitations, pursuant to Fl. St.733.702 and Fl. St. 95.11(3) and laches
       95.11(6) before attempting to collect the debt.                   13

    D. NDGA confirms Nutter is collecting a debt                          16

E. Appellees are debt collectors as defined by FDCPA                19

F. CFPB in RESPA makes clear executors, heirs and beneficiaries be given
   the same rights as the borrower and require all the procedures follow
   regulation and law before attempts to collect any debt             22

G. Consumer's reliance on Maxims of law and Georgia evidence code could
   not affect the mandatory duty and obligation of the appellees when they
   sent communications to the consumer.                               25

H. Denying Motion to Dismiss with Prejudice and Granting Leave to
   Amend is Proper and Would not be Futile                           27

I. CONCLUSION                                                        30

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)                            33

CERTIFICATE OF SERVICE                                               34

## APPELLANT'S AMENDED CERTIFICATE OF INTERESTED PARTIES

The Plaintiff/Appellant, Sherrie Hampton-Muhamed, certifies that the following is a complete list of the trial judge, attorneys, associations of persons, firms, partnerships or corporations known to her that could have an interest in the outcome of this case as defined by 11th Cir. Local Rule 26.1-1: Appellant amends this due to the apparent misstating that all Ronald R. Wolfe Appellees were attorneys for Ronald R. Wolfe, Appellee instead of the Appellees themselves. That has been corrected to reflect the proper association. The entities that were added in this amendment are in bold. Any parties removed initially and replaced are the attorneys representing the Nutter Defendants in the Initial Claim (NDGA) in italics

**Name: Role in Case:**

Anthousis, Julie  - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Bank One Trust Company, N.A.

Barto Hill, Suzanne - Attorney for Defendants and Appellees, Member of Rumberger, Kirk & Caldwell Law Firm

Cooper, Clarence- Senior District Judge United States District Court of Northern District of Georgia

Croteau, Amanda – Attorney with Ronald R. Wolfe & Assocs. , Defendant and Appellee

Ellis, Damon M.– General Counsel for  Ronald  R. Wolfe & Assocs.

Federal Housing Administration

GNMA REMIC TRUST 2003-099

Government  National Mortgage Association

Gowen, Kevin Richard – Attorney for  Defendants and Appellees , Member of Rumberger, Kirk & Caldwell Law Firm

Hampton-Muhamed, Sherrie -Plaintiff and Appellant

Hannon, Frances- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Holley, William J. II- Attorney for Wolfe Defendants, Member of Rumberger, Kirk & Caldwell

Hummel, Brian R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Huey, Bruce – Vice President of James B Nutter & Co., Defendant and Appellee

Ivanov, Ivan – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

James B Nutter and Company, Defendant and Appellee

JP Morgan Chase Bank

JP Morgan Securities, Inc.,  name change to JP Morgan Securities, LLC, subsidiary of JP Morgan Chase & Co.

Jones, Victoria S. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Lewis, Rhonda K. – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Marks, Matthew – Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

McCaffrey, William – Securitization Analyst

Moravecky, Sabrina - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Nutter, James B. Jr.- CEO James B Nutter & Co., Defendant and Appellee

Phillips, John J. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Pidala, Andrea D. - - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Pitzner, Al – Vice President of Compliance for James B Nutter & Co., Defendant and Appellee

Ronald R. Wolfe & Associates, P.L., is Law Firm,  Defendant and Appellee

*Rosenkoff, Matthew R.- Attorney for Nutter Defendants, Member of Taylor, English Duma LLP.  Attorneys in initial complaint from NDGA.*

Rumberger, Kirk & Caldwell Law Firm for Appellees and Defendants

**Safeguard Properties, LLC- 7887 Safeguard Cir, Valley View, OH 44125**

*Schildhammer, Ann Reinhard- Attorney for Nutter Defendants, Member of Taylor, English Duma LLP,  Attorney in initial case from NDGA*

Schneider, Robert F.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Tilka, Katherine R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Ugaz, Luis F. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

United States Housing and Urban Development

Walker, Linda T., Magistrate Judge United States District Court of Northern District of Georgia

Ward, Keith, CFO of James B Nutter & Co., Defendant and Appellee

Whittemore, James D. – U.S. District Judge, United States District Court, Middle District of Florida, Tampa

**Wilson, Thomas G. - U.S. Magistrate Judge, United States District Court, Middle District of  Florida, Tampa**

Wolf, Matthew D. - Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

Wolfe, Ronald R.- Attorney for Ronald R. Wolfe & Assocs., Defendant and Appellee

*Zweigel, Scott Eric – Attorney for Nutter Defendants, Member of Taylor, English Duma LLP, Attorney in initial case from NDGA.*

Respectfully resubmitted this 26th day of April, 2016,

                          All Rights Retained Without Prejudice
                          Without Recourse
                          Respectfully submitted,

                          _____

                          Sherrie Hampton-Muhamed
                          4329 Donerail Dr.,
                          Snellville, GA 30039
                          (404) 786-6291
                          cmrsinc@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April, 2016, a true and correct copy of the foregoing Amended Certificate of Interested Parties was mailed to all parties as noted below.

*Certified Mail # 7008 0150 0002 6978 3664*

**RUMBERGER, KIRK & CALDWELL, P.A.**
Suzanne Barto Hill, Esquire, Florida Bar No. 0846694,
shill@rumberger.com
Kevin R. Gowen, II, Esquire, Florida Bar No. 0900621,
kgowen@rumberger.com
Post Office Box 1873, Orlando, Florida 32802-1873

Telephone: (407) 872-7300        Telecopier: (407) 841-2133

**UNITED STATES DISTRICT COURT OF APPEALS FOR THE
ELEVENTH CIRCUIT**, 56 Forsyth St. N.W., Atlanta, GA 30303

And with the Clerk of Court through US Mail, Certified Mail # 7008 2810 0002
2457 3735 US,  and not filed electronically as Plaintiff is excused from filing this
document or thing electronically by Court order.

_____

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, Georgia  [30039]
(404) 786-6291
cmrsinc@comcast.net

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Sherrie Hampton-Muhamed, feels it necessary for oral arguments related to the confusion of all of the issues. Hopefully, this Court will deem it necessary or helpful in adjudicating the issues.

## TABLE OF AUTHORITIES

**CASES**                                                                    Page #

*Alexander Hamilton Corp. v. Leeson*, 508 So. 2d 513
  (Fla. 4th DCA1987)...........................................................................................21

Ashcroft v. Iqbal, 129 S.Ct. at 1950.........................................................................31

*Bates v. C & S Adjusters, Inc.*,980 F.2d 865 (2nd Cir.1992)..............................................9

*Birster v. Am. Home Mortg. Serv.*, 481 F. App'x 579, 583 (11th Cir. 2012).........................17

*Bourff v. Rubin Lublin, LLC.*, 64 F. 3d 1238,1241(11th Cir. 2012);....................................21

Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1303 & n.2 (11th Cir. 2014)...............17,18

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F. 3d 1162, 1176 (9th Cir. 2006). ......29

Davies v. Wolfe., Fl 4 DCA (2015). ..........................................................................18

*Diaz v. Fla. Default Law Grp., P.L.*, No. 3:09-cv-524-J-32MCR, 2011 WL 2456049
  (M.D. Fla. Jan. 3, 2011)......................................................................................19

*Haines v. Kerner, 404 U.S. 519 (1972)*......................................................................29

*Hamilton v. United Healthcare of Louisiana, Inc.* 310 F. 3d. 385, 392 (5th Cir. 2002)............29

 *Harrison v. Enventure Capital Group, Inc.,* 666 F. Supp. 473, 479 (W.D.N.Y. 1987  ............30

*Heintz v. Jenkins*, 514 U.S. 291(1995)......................................................................20

*Johnson v. Riddle,* 305 R. 3d 1107, 1117 (10th Cir. 2002)............................................30

Lachman v. Bank of Louisiana in New Orleans, 510 F.Supp. 753, 760 (N.D.Ohio 1981)..........9

*Nagler v. Admiral Corporation*, 248 F. 2d 319, 322 (2d. Cir. 1957). ...............................30

*Owens v. Ronald R. Wolfe & Associates, P.L.*, No. 13-61769-CIV, 2013 WL 6085121,
at *2 (S.D. Fla. June 28, 2013..............................................................................19

*Reese v. Ellis, Painter, Ratterree & Adams,* LLP, 678 F.3d 1211
(llth Cir. 2012);1217;1218......................................................................................16,20

*Russel v. Aurora Loan Servs., LLC,* 163 So.3d 639,642(Fla. 4DCA 2015).........................13

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 495 (Fla. 4th DCA 2001).......21

*Shoup v. McCurdy & Chandler, LLC.,* 465 F. App'x 882 (11th Cir. 2012). .........................21

*Sluys v. Hand, 831 F. Supp. 321*...........................................................................9

*Stern v. General Elec. Co., 924 F 2d 472, 477(2d Cir. 1991)* ... ... ... ... ... ... ... .....30

*Taylor v. Bayview Loan Serving,* Florida 2DCA.....................................................13

*Vlasak v. Rapid Collection Systems, Inc.*, 962 F.Supp. 1096, 1102-03 (N.D.Ill.1997).............10

### **STATUTES/CODES/RULES**

15 USC §1692g(a)..............................................................................14,29

15 USC §1692g(b)............................................................................. 1,29

15 USC §1692g....................................................................................11,29

15 USC §1692a(6).................................................................................20

15 USC 1692(i)............................................................................. 6,7,31

15 USC 1692 (i)(2)(B)..............................................................................8

15 U.S.C. § 1692e ....................................................................14,17,20

15 USC 1692 et seq .........................................................................5,32

15 U.S.C. § 1692f.................................................................................14

15 USC 6801.........................................................................................1

15 USC 1692 a(4)...................................................................................22

15 USC 1692a(3)...................................................................................22

15 USC 1692f(6) ....................................................................................16

15 USC 1692 c(d)...................................................................................22

28 USC 1404(a)...............................................................................8,9,31

12 USC 2605...........................................................................................5

15 U.S. C 1601 et seq...............................................................................29

15 USC 1692k(a)......................................................................................4

15 USC 1692l...........................................................................................4

Public Law 111-274.................................................................................5

OCGA 24-4-23..............................................................................25

OCGA 24-14-23............................................................................26

OCGA 10-1-851............................................................................32

Fl. St. 831.02............................................................................2,11

F.S. 812.014.................................................................................3

F.S. 673.3091(2)..........................................................................12

F.S. 733.702...............................................................................14

F.S.733.710................................................................................15

F.S. 95.11(3)...........................................................................14,15

F.S. 95.11(6)...........................................................................14,15

F.S. 671.101................................................................................27

Fed.R.Civ.P.12.............................................................................14

Fed.R.Civ.P.8f..............................................................................29

## OTHER AUTHORITIES

S. Rep. No. 95-382, at 5(1977)at 4.............................................5,14,29

Article III, U.S. Constitution..................................................................5

FDCPA Commentary at 53 Fed.Reg. 50097-50110 (December 13, 1988)............................7

Garn-St. Germain Depository Institutions Act of 1982.........................................23

Troutman Sanders CFPB Bulletin "CFPB Intends to Extend Reach of Federal Debt Collection Law to all Financial Institutions...............................................................24

BUREAU OF CONSUMER FINANCIAL PROTECTION 12 CFR Part 1026 [Docket No. CFPB-2014-0016] RIN 3170-ZA00 Application of Regulation Z's Ability-to-Repay Rule to Certain Situations Involving Successors-in-Interest AGENCY: Bureau of Consumer Financial Protection. ACTION: Final rule..................................................................24

Consumer Financial Protection Bureau...............................................4-6,8,10,22-25,27

Federal Trade Commission.........................................................................4,7,8,10

Internal Revenue Service..........................................................................22

## MANDATORY JUDICIAL NOTICE

I am requesting the court take mandatory judicial notice of the following facts that have been ignored by appellees and diverting the court's attention away from the most salient facts. The facts have been stipulated to by appellees errors and omissions as well. These statements are being made under penalties of perjury with the ability to testify to the veracity of the evidence.

1. I HAVE NO CONTRACT, AGREEMENT OR TRUST WITH JAMES B. NUTTER & CO.

2. In violation of 15 USC §1692g(b)[1], Nutter by and through their agents have never obtained verification from the original creditor of the original loan level documentation and validated that information providing it to Hampton.

3. There is no account, no account stated, nor an alleged debt between Hampton and Nutter.

4. I am not in receipt of an opt-out notice pursuant to the Graham, Leach Bliley Act (15 USC§ 6801).

5. I am not in receipt of the original, unaltered, authenticated promissory note

---

[1] If the consumer disputes the debt in writing within thirty days of receiving such a notice, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt" and mails the consumer a copy of that verification. Id. § 1692g(b). By the same token, if the consumer makes a written request for the name and address of the original creditor within that thirty-day period, the collector must cease collection efforts until it sends the consumer that information. Id. Congress explained that this validation requirement was a "significant feature" of the law that aimed to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977).

and mortgage and the ones presented to court by Wolfe are forged.(Fl. St. 831.02)

6.  The only contracts I have are with the U.S. District Court Northern District Georgia, Atlanta (NDGA) and Eleventh Circuit Court of Appeals to obtain fair and honest judicial services and I accept the judge's oaths.

7.  I did not consent to any jurisdiction of any courts in Florida and have no commercial nexus to the state of Florida

8.  Judge Whittemore divested the MDFL of jurisdiction throughout the appeal process and denied me access to the court by not allowing telephonic appearances.

9.  I am not in commerce or business for gain or profit.

10. All that I have is for personal, family or household purposes.

11. Nutter is a corporation licensed to do business in Georgia and is intentionally and willfully violating federal law, regulations and statutes and is damaging me and possibly others similarly situated.

12. Nutter has illegally obtained my private, personal information.

13. Nutter has illegally given my personal, private information to other third parties.

14. Nutter by and through their agents are deceiving all parties into believing I am a debtor or borrower when I am an elderly woman and a consumer.

15. Nutter by and through their agents have defied a court ordered subpoena and three judges orders in the Florida 12th Circuit.

16§. Nutter is responsible by and through their agents for illegal trespass and grand theft of my personal family property as defined by Fl. St. 812.014.

17. Nutter's negligence and incompetence by and through their agents has caused this consumer and her family significant damages that include hospitalization, increased medical treatment, financial exploitation, intentional infliction of emotional distress, grand theft property damage, theft of personal property and chattel property, identity theft, tax fraud and tax evasion.

## I.    <u>INTRODUCTION</u>

Sherrie Hampton-Muhamed's (hereinafter "Hampton" or "Consumer"), Initial Brief attempted to demonstrate how the trial court committed prejudicial error that demands reversal to the Northern District Court Georgia, Atlanta (NDGA) or resolution by this court. Appellee's Answer Brief fails to rebut Hampton's arguments and mistakes and misstates the relevant facts and law. These misstatements of facts would make it impossible for a judge to make a fair, intelligent decision. There are too many errors in facts making Appellee's brief disingenuous and it should be stricken from the record and the record should be reviewed de novo.

Hampton exhausted all of her administrative remedies before even considering bringing this claim. With the private right of action given to us by Congress, it should keep the prose out of court. Instead consumers get prejudice and discrimination when we have to come into court. All consumers want is for corporations and the courts to be fair and comply with the law! To ensure compliance, the FDCPA gives consumers a private right of action to sue for violations of the law and to recover actual and statutory damages as well as attorneys' fees. 15 U.S.C. §1692k(a). **I have consented to nothing in the Florida courts** and the appellees and courts have yet to obtain personal jurisdiction over me or jurisdiction over the subject matter in the Florida courts (state or federal). This consumer is an elderly, disabled woman who has been erroneously sued for a dead man's debt, who is only here to relay the facts of what these appellees are liable for. The FTC and CFPB back the consumer under FDCPA and what the consumer's compensation should be for appellee's gross negligence and multiple violations. Consumer is not arguing about what her protections are, since Congress has already defined them into law under FDCPA and the law is clear and unambiguous.

## II.  RESTATEMENT OF FACTS AND LAW

Although the Bureau and various other federal agencies have authority to enforce the Act, 15 U.S.C. § 1692*l*, Congress intended the Act to be "primarily

self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977). An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts. Due to the extensive damages and abuse and because she is a federally protected consumer under FDCPA Hampton is invoking the protections of federal question and Article III of the Constitution. This has nothing to do with commerce or a commercial contract.

The only law of the case is Fair Debt Collections Practices Act (FDCPA), 15 USC §1692, *et seq*.; Real Estate Settlement Procedures Act (RESPA), 12 USC §2605, *et seq.* the language of this case is plain language as instituted by executive order in 2010, Public Law 111-274. It is obvious this consumer does not understand legalese and it is abusive to expect her to communicate in anything other than plain English. I paid for contracts with this court and the NDGA and had a reasonable expectation to get services that were fair and honest and dealt with the issues of the law, FDCPA and RESPA. FDCPA is complete and allows the consumer discovery, remedy, conclusion and strict adherence to the law itself.

Let me make it perfectly clear that I am not a pauper and able to satisfy any legitimate debt. The only thing I demand is proper verification and validation as mandated by Congress and the CFPB. There is nothing here to argue as there is no

contract to bring an action against me. So if the appellees can provide original loan level documentation (account and general ledger statement) sworn to by the original creditor, since we know Nutter is not, and validate it, I will take care of it now. I was administrator of my brother's estate so I had every right to get the same information by law they would have given him. Since appellees refused to comply with my demands in my private action to stop all debt collection, I am requesting the court stop their abuse and torture and invading my privacy. I cannot comply with illegal acts and brought the felonies of Nutter to the judge's attention and the police and yet I am still ignored. I have done my best to abide by the laws and expect appellees to do the same and stop the deceptive misrepresentation and provide evidence of a valid debt. If not she requests the court ratify this consumer terminating all debt collection and issue injunctive relief forever preventing these debt collectors from creating anymore damage. Additional damages will ensue for further deceptive practices of any sort and the continued criminal identity theft and tax fraud.

**A. Whether the NDGA erred or abused its discretion in transferring this consumer's claim to MDFL, another District and another STATE when the LAW states that transfer can only be done upon consent of ALL parties and CFPB states to protect consumers collection can only be done where this consumer lives under 15 USC§1692(i).**

Not only is Hampton not supposed to be disadvantaged in proceeding with the protection of her rights, the Federal Courts have gone out of their way to

discriminate against a disabled consumer and force her (when no other case law shows that any other court has required it) to go to a foreign district and state they have no jurisdiction over her in, 700 miles away, so she can protect her personal family property. Where in the law is it required for a consumer to go to the defendant that has criminally violated her and the law to get protection? Consumer has well documented what she could find related to transfer of venue in the Objection to the Appellees Motion to Dismiss (Doc.28-1,pg.14-16) Objection to the Magistrates Orders (Doc.39,pgs.20-33) and her Interlocutory Appeal for Reconsideration(Doc. 68-1 pg. 2-5)

The Federal Trade Commission ("FTC") has issued an Official Staff Commentary in which it stated that 15 USC§1692i "applies to lawsuits brought by a debt collector, including an attorney debt collector, when the debt collector is acting on his own behalf or on behalf of his client." See Fair Debt Collection Practices Act Commentary at 53 Fed.Reg. 50097-50110 (December 13, 1988).

*Section 811 provides that a debt collector may sue a consumer only in the judicial district where the consumer resides or signed the contract sued upon,*

*(4). Services without written contract.* Where services were provided pursuant to an oral agreement, the debt collector may sue only where the consumer resides. He may not sue where services were performed (if that is different from the consumer's residence), because that is not included as

permissible forum location by this provision.

**Section 816** provides that the FDCPA pre-empts state laws only to the extent that those laws are inconsistent with any provision of the FDCPA, and then only to the extent of the inconsistency. A state law is not inconsistent if it gives consumers greater protection than the FDCPA.

*(1)Inconsistent laws.* Where a state law provides protection to the consumer equal to, or greater than, the FDCPA, it is not pre-empted by the federal statute.

Without the existence of a contract between a debtor and a debt collector, the debt collector cannot bring any action against an alleged debtor in any jurisdiction other than the jurisdiction where the alleged debtor lives. Hampton lives in Georgia. Nutter brought its debt collection activity into Georgia by sending Hampton letters, which she received in Georgia. Hampton brought this FDCPA action under the right venue and jurisdiction and the proper forum, the NDGA, pursuant to 15 USC§1692 (i)(2)(B) and 28 USC §1404(a) since nothing in the FTC or CFPB forces a consumer to go out of her District, much less to another state, to bring an action in this court. NDGA is the only judicial district court that this action could be taken in from the beginning.

Hampton realizes now that 15 USC§1692(i) has always had precedence over any other case law, including 28 USC§1404(a), which was revised in December, 2011, but does not make the law irrelevant or illegal to enforce. The following rule

was attached to Hampton's non-consent to transfer motion (Doc. 43-1) and the reason that she used it in her motions and filed the interlocutory appeal related to the transfer of venue. The appellees have deliberately and intentionally eliminated the last part of the code that was revised not only in their appeal brief but in all of the other motions where they objected. It should be sanctionable to deceive the court and deliberately eliminate part of the code. 28 U.S.C.§1404(a):

> "For the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which ALL PARTIES HAVE CONSENTED."

Hampton does not live in Florida and is not carrying out any business or commerce for benefit, gain or profit and since this is not a public transaction, Florida could never have jurisdiction over her or the issue. Hampton has fought jurisdiction from the beginning, but nothing has been resolved yet.

> "Also, the majority of FDCPA cases have held that the plaintiff's claim arises in the district in which the plaintiff received the offending communication or debt collection letter. See *Bates v. C & S Adjusters, Inc.,*980 F.2d 865 (2nd Cir.1992) (venue in FDCPA case was proper where debtor resided and where debt collector's demand for payment was forwarded); *Paradise,* 883 F.Supp. 521 (venue proper where plaintiff received debt collection letter); *Russey,* 837 F.Supp. at 1105 (consumer's receipt of collection notice was substantial part of events giving rise to claim under FDCPA); *Lachman v. Bank of Louisiana in New Orleans*, 510 F.Supp. 753, 760 (N.D.Ohio 1981) (venue in FDCPA case was proper where plaintiff received debt collection letter because that is where the injury occurred).
> The court's reasoning in *Sluys v. Hand*, 831 F. Supp. 321, is persuasive:
> "Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the

transmittal of those documents is claimed to have violated the Act, suits may be brought where the debtor receive[s] the communications. Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned. "Id. at 324; see also *Russey*, 837 F. Supp. at 1105 (exercise of its discretion to transfer venue "would frustrate the Congressional goal that the FDCPA be primarily enforced through the efforts of the aggrieved consumer") (citations and quotations omitted); *Vlasak v. Rapid Collection Systems, Inc.*, 962 F.Supp. 1096, 1102-03 (N.D.Ill.1997) (same)." (Doc. 26 pg.16-17)
Doc. 39 pgs. 20-33 extensively explains how venue and personal jurisdiction to not apply in consumer protection lawsuits.

It is time for the courts to realize that the CFPB has stressed consumer protection for a reason and given us a private right of action.  It is apparent by FTC and the CFPB, that the consumer is protected above any previous case law, opinions, rules or regulations and probably the reason that this consumer has found no case law forcing a consumer to file suit out of her district or outside where she lives!

Hampton deserves to be provided with the facts and the law that destroys all of her federal consumer and constitutional protections, and as an elderly, disabled woman requires her to go out of her district to stop thieves from stealing her home.

**B. Whether the NDGA and MDFL abused its discretion by not reviewing any facts of the case to prove that there could be no foreclosure and there was no creditor to foreclose.  Appellees cannot bring a foreclosure action or any action against consumer.**

**THERE IS NO CONTRACT, AGREEMENT OR TRUST - NOT WRITTEN, ORAL OR ASSUMED.  APPELLEES FILED A FORGED**

## NOTE AND MORTGAGE INTO THE COUNTY RECORDS, SO WHAT WOULD THEY FORECLOSE ON?

Appellees state that Hampton never discussed foreclosure in their claim or brief and that is because this has nothing to do with debt or foreclosure-only behavior and conduct, but the judges and appellees have not left it alone so to prove that **there is nothing to foreclose**, this consumer will show what is required for a valid foreclosure. Congress enacted 15 USC§1692g to eliminate the problem of debt collectors attempting to collect the wrong amounts from the wrong consumers. To that end, the provision requires debt collectors, upon initially contacting a consumer, to provide the consumer a validation notice containing key information about her debt and her rights, and gives the consumer thirty days after receiving that notice to dispute the debt and to obtain the identity of the original creditor If the consumer exercises that right, the collector must halt collection efforts until it verifies the debt or provides the requested information. For these requirements to serve their purpose, they must apply to initial and subsequent debt collectors alike.

The appellees attempted to serve the last complaint in July of 2014. In order to file a foreclosure in Florida, the real party in interest," the creditor", must have the original unaltered, authenticated note and mortgage before bringing the lawsuit and have the following information before proceeding:

"The law now requires that foreclosure complaints ... must now contain certain specific allegations that the plaintiff is the holder of the **original note** at the time the suit is commenced. In addition, the complaint must specify the <u>**factual basis by which the plaintiff is the person with standing to enforce**</u> the obligation. A party that has been "delegated the authority to institute a mortgage foreclosure action" must identify the document that grants the authority to act on behalf of person entitled to enforce the note.

If the plaintiff has the original note in its possession, it now **must file an affidavit certifying its possession.** This must be filed at the time the complaint is filed and must comply with the informational requirements of the statute copies of the original note and all allonges must be attached to the certification (and, by implication, the complaint as well). The statute requires the original note *and all allonges* be filed with the court prior to foreclosure or judgment on the note. In cases where the original note is lost, the plaintiff must attach to the complaint an **affidavit detailing the chain of endorsements, transfers or assignments of the note** and setting forth facts to show that the plaintiff is entitled to enforce the instrument with copies of all documents evidencing the plaintiff's entitlement attached to the affidavit. The new law says the court *shall* require of the lender "adequate protection" under F.S. 673.3091(2) before entering final judgment.

Based on the regulations above, it is apparent by the record that **there can**

**be no foreclosure**. The note and mortgage have been void since April of 2005, when they were cancelled by the borrower for non-disclosure of proper documents at closing and not revealing who the real creditor was. RRW has filed a forged copy of a note and mortgage into the county records in Sarasota as originals, pursuant to Fl. St. 831.02. If Nutter ever had the note, they sold it as is shown on the note with the complaint "without recourse" and have lost all rights, title and interest.(Doc. 3-6 pg.1)   There are absolutely no liens on this property or verification of any kind of interest.

Standing at inception of a lawsuit is required in Florida. The present servicer was required to prove at trial that the original servicer (the one that filed to foreclose) held the note at the time the case was filed (see: Russell v. Aurora Loan Servs., LLC, 163 So. 3d 639, 642 (Fla. 2d DCA 2015)).

In its 11/9/11 opinion _Taylor v. Bayview Loan Serving,_ Florida 2nd District Court of Appeal, held that if a promissory note is secured by a mortgage, and if the note is assigned, then the mortgage follows the note and is automatically assigned along with the note, even if no separate assignment of mortgage is recorded. The note in this case was sold "without recourse" as evidenced by the attached note with the complaint, leaving Nutter with no rights, title or interest on the note or mortgage.

**C. It is a violation of FDCPA to not make consumer aware at the time they attempt to collect the debt that the alleged debt is beyond the statute of**

**limitations, pursuant to Fl. St.733.702 and Fl. St. 95.11(3) and laches 95.11(6) before attempting to collect the debt.**

Rather, a debt collector violates the statute whenever its communications tend to deceive or mislead "the least sophisticated consumer," whom the FDCPA was enacted to protect. Depending on the circumstances, a settlement offer can erroneously lead unsophisticated consumers to believe a debt is enforceable in court even if the offer is unaccompanied by any clearly implied threat of litigation.

The complaint alleges that the letter violates the FDCPA, 15 U.S.C §§1692e & 1692f, 1692g(a)[2] Because this appeal arises from the grant of a motion to dismiss, amici take the complaint's factual allegations as true. See Fed. R. Civ. P. 12. because the failure to disclose that the debt was time-barred amounted to a misleading representation that the debt could be legally enforced.

A debt collector who seeks payment after the statute of limitations has run on a debt may violate the FDCPA if, inter alia, its communication would lead the least-sophisticated consumer to believe that the debt may be enforced in court. With respect to time-barred debt, it is well established that implicit or explicit threats to sue and actual lawsuits violate the Act. But other communications that mislead consumers may also qualify. In this case, the district court erred in

---

[2] 15 U.S.C. § 1692g(a), that requires debt collectors to provide consumers certain information about their alleged debts and their rights either in the debt collector's initial communication with the consumer or within five days thereafter. This provision is critical in protecting consumers from improper attempts to collect debts that consumers do not actually owe. See S. Rep. No. 95-382, at 4 (1977).

dismissing the complaint, because the debt collector's letter could plausibly mislead the least-sophisticated consumer as to the legal status of the debt.

Florida Probate Code (Fl. St 733.710) provides a 2-year statute of limitations on creditor claims.

(1)    Notwithstanding any other provision of the code, 2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section.  Since it has been verified that there are no liens or interest of any kind on any of the decedent's property none of the exceptions could apply.

Without a written contract Florida only allows four years to collect on an alleged debt and two years on the probate issue.  The defendants waited more than four years to notify consumer that they were going to pursue debt collection activities as evidenced by their first written form letter of October 4, 2012.  The borrower died on September 8, 2008.  Defendants were given a death certificate and executor papers by the consumer/executor and received notice from the probate attorney and publications referencing this action all around end of September 2008 and again later.

Florida's Statue of Limitation 95.11 actions that are not under the 1, 2 or 5 year statute will fall under the 4-year catch-all limitations period, (F.S. 95.11(3)(p)(k)(l)).
95.11(3) WITHIN FOUR YEARS.—

(p) Any action not specifically provided for in these statutes.

(k) A legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts.

(l) An action to rescind a contract.

95.11 (5) WITHIN ONE YEAR.—

(a) An action for specific performance of a contract.

(h) An action to enforce a claim of a deficiency related to a note secured by a mortgage against a residential property that is a one-family to four-family dwelling unit.

95.11(6)   LACHES.—

Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.

## D. NDGA confirms Nutter is collecting a debt

1) **Magistrate Walker states that letter sent by Wolfe is an attempt to collect a debt**
2) **Hampton did state a claim upon which relief could be granted**
3) **Nutter's Motion to Dismiss should be denied.**

The Eleventh Circuit Court of appeals, issued a published opinion in *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211 (llth Cir. 2012), holding that "an entity that regularly attempts to collect debts can be a 'debt collector' beyond 1692f(6) of the FDCPA, even when that entity is also enforcing a security interest."

"Plaintiff contends in response to the Nutter Defendants' Motion to Dismiss, however, that a letter sent by RRW on October 4, 2012 constituted debt collection activity on Nutter & Company's behalf. When a letter by a debt collector intends not only to announce an impending foreclosure but also attempts to collect the amount owed under a promissory note, the letter could be attempting to collect a debt. *Reese,* 678 F.3d at 1217 (concluding that letter

demanding full and immediate payment of all amounts due the lender, threatening to add attorney's fees to the total amount for which collection was sought, and stating that law firm was acting as a debt collector attempting to collect a debt, was a communication related to the collection of a debt within the meaning of 15 U.S.C. § 1692e, even though communication was primarily designed to inform borrower that lender intended to enforce its security deed through the process of non-judicial foreclosure); see also *Birster v. Am. Home Mortg. Serv.*, 481 F. App'x 579, 583 (11th Cir. 2012) (holding that servicer engaged in debt collection activity because it sent a letter demanding payment in addition to warning of impending foreclosure).........."

"In this case, although the letter does not specifically demand that

Plaintiff repay the loan as the letter did in Reese, *supra*, this Court agrees with Plaintiff that **the letter constitutes debt collection activity**. A letter does not have to formally demand payment to constitute debt collection activity. *Cf. Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 & n.2 (11th Cir. 2014) (explaining that while letter did not formally demand payment, it implicitly demanded repayment when it stated that it was sent for the purpose of collecting a debt, referred to past collection efforts, stated that collections efforts will continue, noted that additional attorneys' fees and costs would accrue, stated the amount of the debt owed and indicated that the debt must be paid in certified funds, gave the name of the creditor, and supplied the law firm's telephone number in the paragraph where it talked about payments). **RRW's letter, while not formally demanding repayment, did implicitly attempt to collect a debt**. (Am. Compl., Ex. I, Doc. [3-5, p. 6-8]). The letter, which was attached to Plaintiff's Complaint, provided that Nutter & Company has accelerated all sums due and owing and that the entire principal balance and all sums recoverable under the Note were due. (Id.). The letter indicated that the amount owed was $93,953.02, warned that the firm was in the process of filing a complaint to foreclose on the property, indicated that additional interest and expenses would accrue after the date of the letter and are recoverable under the Note, and suggested at one point that if Plaintiff wished to bring her loan current or pay her loan through a specific date, she should contact the law firm. The letter informed Plaintiff that the law firm was attempting to collect a debt. Under

these circumstances, **Plaintiff's Amended Complaint sufficiently alleges debt collection activity**. Accordingly, the Nutter Defendant's Motion should be **DENIED** as to Plaintiff's claims against Nutter & Company stemming from RRW's October 4, 2012 letter." (Doc. 37 pg. 20-21).

As stated in their Motion to Dismiss which was overturned, the same exact statements were made in both cases with the same exact attorneys and attorney defendants. _Davies v. Wolfe_, Fl 4 DCA (2015). "However while the letter did not explicitly demand direct payment, the following excerpts from the letter are sufficient to state a claim that Wolf was engaged in debt collection efforts on behalf of its client:

> *The entire principle balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due
> *Additional interest will accrue after the date of this letter
> *If you wish to receive figures to reinstate...or pay off your loan through a specific date, please contact this firm at (813) 251-4766 or client.services@wolfelawfl.com
> *This law firm is attempting to collect a debt...

Implicit demands for payment, such as these, are sufficient to find a communication an attempt to collect debt. See _Carceres v. McCalla Raymer, LLC_, 755 F.3d 1299(11th Cir. 2014) (finding references to collection efforts, statements about the amount of debt owed and instructions on how to pay off one's debt as indicators of debt collection activity)[3] This consumer did plead correctly that she

---

[3] Wolfe dismisses these collection-related statements as "mini-Miranda" language that does not convert foreclosure communications into debt collection efforts. "Mini-Miranda" language is a term used to describe the

was the object of debt collection activity."

**E. Appellees are debt collectors as defined by FDCPA**

"The Act defines "debt collector" as a person whose "principal purpose" is

debt collection or "who regularly collects or attempts to collect" debts, 15 U.S.C. §

1692a(6).

James B Nutter is a debt collector as defined by 15 USC §§1692a (6) and

f(6) and their own statement filed with interrogatories in August of 2013.  The

letter states the following: (Doc. 3.8 PG. 13)

> **"PLEASE BE ADVISED THAT JAMES B NUTTER & CO IS
> THE  SERVICER OF THE MORTGAGE NOTE AND THE
> HOLDER  OF  THE  MORTGAGE  NOTE  AND  THE
> OWNER/INVESTOR  OF  THE  MORTGAGE  NOTE  IS
> SECRETARYOF HOUSING AND URBAN DEVELOPMENT
> (HUD).  THAT IS THE PARTY THAT IS "LOOKING TO BE
> PAID."**

Throughout their pleadings and Motions to Dismiss Nutter and Wolfe both

state that Nutter is a creditor and led the court to believe that Nutter was a creditor.

Yet, clearly from their own communications, **HUD is the owner**/creditor.  By

misleading the court, appellees brought "fraud upon the court" where the judge

was using the false information to make a decision that prejudiced Hampton and

---

mandatory disclosures that the FDCPA requires in communications with debtors.  Wolfe points to a Middle
District of Florida decision to support that claim. See Diaz v. Fla. Default Law Grp., P.L., No. 3:09-cv-524-J-
32MCR, 2011 WL 2456049 (M.D. Fla. Jan. 3, 2011) (finding that an identical letter from the same defendant as in
this case was not an attempt to collect a debt).  The Middle District, however, made that decision prior to the
Eleventh Circuit's rulings in Reese and Birster.  A more recent decision in the Southern District of Florida, also
involving the same defendant, cited Reese in holding that" the so-called "mini-Miranda" language employed by
Wolfe is evidence of collection efforts. See *Owens v. Ronald R. Wolfe & Associates, P.L.*, No. 13-61769-CIV,
2013 WL 6085121, at *2 (S.D. Fla. June 28, 2013).

violated 15 USC §1692e.  Since Nutter was a third party with no authority to bring any action in court against Hampton, there was no real party in interest to file an alleged foreclosure in court.

Ronald R. Wolfe, *et al* has already stated they are debt collectors in every Correspondence and communication (phone calls, emails, letters, litigation), "that this law firm is attempting to collect a debt," stating also that they are attorneys acting as debt collectors for the "creditor."  A "debt collector is any person who uses any instrumentality of commerce or the mails in any business the principal purpose of which is the collection any debts, or who regularly collects or attempts to collect directly or indirectly for third parties," (*Reese*, 678 F.3d at 1218), "debts owed or due or asserted to be owed or due another" (15 USC §1692a(6).  Lawyers who regularly attempt to collect debts for their clients are debt collectors under the FDCPA.  *Heintz v. Jenkins*, 514 U.S. 291 (1995).  RRW are third party trespassers, allegedly acting as agents for third party trespassers, Nutter, collecting an alleged debt for as of yet unidentified third party(ies).  Wolfe identified itself as a debt collector in the letter it sent Ms. Hampton and this satisfies the second element of an FDCPA claim with these debt collectors.

Wolfe falsely represented Nutter as the creditor, which is sufficient to state a claim that appellees violated FDCPA.

On a motion to dismiss, the court is limited to the four corners of the

complaint and must accept facts alleged in the complaint as true.  This was

expounded on in the brief. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.

2d 489, 495 (Fla. 4th DCA 2001).  The letter sent by Wolfe on behalf of Nutter

proving they are not the creditors is enough for Ms. Hampton to satisfy FDCPA

and prove they are debt collectors. ("Where a complaint alleges that an entity

named in a letter to the plaintiff is not a creditor under the FDCPA, the complaint

has stated a claim under 15 USC §1692 a(4)"). See also *Bourff v. Rubin Lublin,*

*LLC.*, 64 F. 3d 1238,1241(11th Cir. 2012); *Shoup v. McCurdy & Chandler, LLC.,*

465 F. App'x 882 (11th Cir. 2012).  So it was apparent that Ms. Hampton could

prove that Nutter was not the creditor of any loan and as a debt collector, Nutter

cannot foreclose.  MDFL should never have dismissed her FDCPA claim for

failure to state a claim.  The other issue of statute of limitations is an affirmative

defense and cannot form the basis of a dismissal for failure to state a claim.

*Alexander Hamilton Corp. v. Leeson*, 508 So. 2d 513 (Fla. 4th DCA 1987).  It was

also already stated that the letter being used gave the consumer 30 days to dispute

the claim, so she would have had until November 10, 2012 to dispute the debt,

making her FDCPA lawsuit filed November 5, 2013 well within the one-year

statute of limitations, which the court ignored.  Beyond the statute of limitations

issue with the October 4, 2012 letter were 12 other violations that fell well within

the one-year statute of limitations, which the MDFL totally ignored.

**F. CFPB in RESPA makes clear executors, heirs and beneficiaries be given the same rights as the borrower and require all the procedures follow regulation and law before attempts to collect any debt.**

Appellees are claiming since Hampton is not the borrower, she is not entitled to information related to the loan that they are requiring Hampton to pay. Now how much sense does that make? Hampton is required to make payments on a dead man's debt, yet she is not entitled to verification that the debt Nutter says she owes is, in fact, a legitimate debt? Does anyone have any common sense?

Sherrie Hampton-Muhamed is a consumer as defined by 15 USC §1692a(3) and a creditor under §1692 a(4) and as administrator for her brother's estate under §1692 c(d). Even though the bond was released and probate was finalized, she still has an obligation to protect her personal, family property and household goods.

First of all, the CFPB has already established that any heir or beneficiary of an estate has the same rights as the borrower and Al Pitzner, VP of Nutter, told Hampton on the phone that, as executrix of her brother's estate, he would send Hampton the information she requested and was entitled to it. However, Hampton never received any information verifying or validating the debt.

Hampton first contacted Nutter in 2009 and 2010 while she was administrating the estate because the IRS required her to file taxes for the estate; but she could not complete. CFPB has clarified mortgage lending rules that assist surviving family members, since they already have title to the property. This rule

not only gives family members access to the property and accounting records as if it were the borrower and arranges modifications, etc without qualifying in order to ease the transition after death. They no longer have to evaluate the heir's financial status before access to arrangements and transfers.

In all of these situations, where the successor acquires property that is subject to a mortgage, the successor is not personally liable for the associated debt, but may choose to assume the debt. The Garn-St. Germain Depository Institutions Act of 1982 prohibits the creditor from exercising a due-on-sale clause based upon certain types of transfers, including the common situation of transfer upon death of a relative. Even where a due-on-sale clause may be exercised, however, creditors may agree to add the successor as a named obligor under the loan contract. Hampton was not named as an obligor under the loan contract, nor has she ever been asked by Nutter to be named as an obligor.

In October 2013, the CFPB provided clarifications[4] on the role of mortgage servicers when a borrower dies. Mortgage servicers are responsible for collecting payments from mortgage borrowers on behalf of loan owners or creditors and must have policies and procedures in place to ensure they promptly identify and communicate with surviving family members and others who have a legal interest in the home. The bulletin[5] provided examples of such policies and procedures,

---

[4] http://files.consumerfinance.gov/f/201310_cfpb_mortgage-servicing_bulletin.pdf

including allowing heirs to continue to pay the mortgage. If consumers can continue to pay the mortgage there would be no reason that they could not validate the debt either!

Since CFPB has made it clear that "executors, heirs and beneficiaries be given the same rights as the borrower [before their death], AND since the CFPB has classified all entities are debt collectors under the FDCPA if only for the purposes of violating unfair and deceptive practices in their attempts to collect a debt, even if they are the original creditor[6], were all the procedures followed by regulation and law before [Nutter's]attempts to collect the debt?" **Absolutely not.**

Upon death, the creditor is required to inform surviving family members of the following:

1)    Who they were and /or that they were attempting to collect a debt;
2)    To obtain borrowers/executors consent before ever proceeding in displaying personal information into the public;
3)    To obtain borrowers/executors consent before giving any information to third parties (i.e. Wolfe, the Sarasota court and other agencies);
4)    To notify the heirs of any alleged default and give them the opportunity to correct any deficiency before proceeding with court action.

Hampton was informed of absolutely nothing based on what the CFPB has put into effect, the argument that Hampton has no standing doesn't exist, and the case law appellees cite has no bearing on what the CFPB has put into place. No

---

[5] BUREAU OF CONSUMER FINANCIAL PROTECTION 12 CFR Part 1026 [Docket No. CFPB-2014-0016] RIN 3170-ZA00 Application of Regulation Z's Ability-to-Repay Rule to Certain Situations Involving Successors-in-Interest AGENCY: Bureau of Consumer Financial Protection. ACTION: Final rule.
[6] Troutman Sanders CFPB Bulletin "CFPB Intends to Extend Reach of Federal Debt Collection Law to all Financial Institutions" – This includes servicers and attorneys as well.

case law or opinion can override the protections of the consumer enforced by the CFPB.

**G. Consumer's reliance on Maxims of law and Georgia evidence code could not affect the mandatory duty and obligation of the appellees when they sent communications to the consumer.**

The communications sent to the consumer in attempts to collect a debt

provide a provision in the letter itself for the consumer to respond within 30 days,

as well as for Wolfe to respond to the consumer's dispute and validation requests.

Wolfe's letter states this:

> "If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed, **this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you.** Also, upon your written request within thirty (30) days after your receipt of this letter, **this law firm will provide you with the name and address of the original creditor**, if different from the current creditor."

The consumer undeniably disputed any validity to the claim with her later

dated October 24, 2012 (in essence contracting back with Wolfe like they did with

their letter) and at the end added:

"Your failure to satisfy this request within the requirements of the Fair Debt Collection Practices Act will be construed as your **absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorneys fees**"

Appellees are correct, the Georgia Evidence Code, Title 24, totally changed in

January of 2013. However, Hampton sent the dispute in October 24, 2012 so

OCGA 24-4-23 was still in effect and would still apply. The code is still in effect,

APPELLANTS REPLY BRIEF          25          CASE NO. 15-15594-C

but it does have a new number so now it is OCGA 24-14-23 and still states:

**"Universal Citation:** <u>GA Code § 24-14-23 (2014)</u>
"In the ordinary course of business, when good faith requires an answer, it is the **duty of the party receiving a letter from another to answer within a reasonable time.** Otherwise, the party shall be **presumed to admit** the propriety of the acts mentioned in the letter of the party's correspondent and to **adopt them**."

A reasonable amount of time is not four years!  This is a maxim of law. There is absolutely no reason in or outside of the code that the rule of evidence should not apply.  All of the letters had disclosures including the last ones sent to both Nutter and Wolfe but had nothing to do with Georgia code, just their fiduciary responsibility as professionals to know how to communicate in business and do what they said they were going to do.  On April 30, 2013 appellees were demanded to cease and desist (Doc.3-7pg.1-5) until they validated the debt, and since they were erroneously collecting from Hampton it was quite justified.  They were creating damages by their actions and they were required by federal law to comply.

The letter stated:

"**This is a second reminder that your failure to satisfy this request within the requirements of the Fair Debt Collection Practices Act will be construed as your absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and legal fees**"

The last letters were sent to both Nutter and Wolfe on June 17, 2013 and had this disclosure (Doc.3-7, pg.7-11 and Doc. 3-8 pgs.1,3-8).

> "Since you are attempting to foreclose on me, I need to determine whether the **Notice** had any legal validity. I believe you are working in concert with others to wrongfully foreclose on my home...

Please, therefore, provide within **TEN (10)** calendar days from the date of this letter the below requested information and any additional information or documents you think establishes your right to make the demands or to carry out the threats of the **Notice**....

**Silence, or an incomplete response will be deemed as your admission** that the **Notice** was improperly issued and that your office has, or had, **no right to enforce the mortgage loan** pursuant to the Florida Statutes, Title XXXIX, Commercial Relations, Chapter 671, Uniform Commercial Code, § 671.101 et seq. and, therefore, have no right to foreclose on my Home...."

Is there anything unclear about this? Oh wait, I forgot, they cannot read! Well now we see the problem, just like suing consumer on a debt with the wrong name. Code or no code this would be used against a consumer without blinking. This is absolutely absurd that the appellees had every opportunity, after six (6) letters to communicate, as mandated by federal law and CFPB and did nothing. So they agreed to everything. The communication was coming to me in Georgia and has as much or more protection than the CFPB, so there is nothing that would not make those letters legal and enforceable. There is also no reason why neither Nutter or Wolfe would respond to any of the letters and not expect to be responsible for what they contained.

## H. LEAVE TO AMEND IS PROPER AND WOULD NOT BE FUTILE

There have been so many willful, intentional misrepresentations that have created so much confusion for me and the courts related to this claim. When Hampton fashioned the complaint, she included a timeline so that if it was read

completely, the facts would be in order and clear.  What she got back from appellees and the MDFL were derogatory remarks that the complaint was too long – not that there were so many violations from so many defendants that this consumer has really been abused and without any justification.  So based on the response, Hampton can only presume that no one read it or read enough of it to see where she did state a claim and how the appellees violated FDCPA and RESPA.

And because of the length, MDFL stated it would be futile for Hampton to amend the complaint[7].  MDFL did not allow an opportunity to provide evidence to support any of her claims or even tell Hampton *how* she failed to state a claim. The first amended complaint requested leave to amend should it be required, but it wasn't necessary, since the NDGA denied the Appellees Motions to Dismiss. Since Magistrate Walker and Judge Cooper in the NDGA stated that Hampton did state a claim, how could MDFL find something so different?  MDFL did not even use all of the facts and violations that were within the statute of limitations and only focused on one letter out of 13 violations, because that was what counsel focused on.  The collection letter that the MDFL based its dismissal upon wasn't even a violation that Hampton claimed, as violation started with them not stopping

---

[7] The amended complaint was the only Complaint served on appellees, and it was changed because of new information related to criminal trespass and theft of her personal property, which was discovered after the initial claim was filed.

collection without validation first (1692g(b)[8], which did not begin until November 7, 2012!

Hampton pled sufficient facts to state a claim and supported her claims with enough evidence to make it plausible on its face that there was no debt for anyone to collect from her. "Allegations such as those asserted by petitioner, however unartfully pleaded, are sufficient… which we hold to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519 (1972). "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice … [t]he federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Hamilton v. United Healthcare of Louisiana, Inc*. 310 F. 3d. 385, 392 (5th Cir. 2002). The FDCPA is a remedial statute. The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.,* 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. 1601 et seq., is a

---

[8] Congress enacted § 1692g to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382 at 4 (1977); see also, e.g., Terran v. Kaplan, 109 F.3d 1428, 1431 (9th Cir. 1997). Section 1692g promotes that purpose by requiring debt collectors, upon first contacting a consumer, to send the consumer a notice with key information about her debt and her rights, and by giving consumers the right to dispute the debt and to request the identity of the original creditor within thirty days after receiving that notice. See 15 U.S.C. § 1692g(a), (b). If a consumer exercises that right, the debt collector must halt all collection efforts until it responds to the consumer with verification of the debt or the identity of the original creditor, as requested. Id. § 1692g(b).

remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 R. 3d 1107, 1117 (10th Cir. 2002).

"It has long been well established that outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts." *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987)(quoting *Nagler v. Admiral Corporation*, 248 F. 2d 319, 322 (2d. Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead.*" Stern v. General Elec. Co.*, 924 F 2d 472, 477(2d Cir. 1991).

Hampton pled sufficient uncontroverted facts to state a claim for relief to be granted, which NDGA agreed with, and attached significant uncontroverted fact evidence to support the contentions of the violations of FDCPA and RESPA, which were asserted in the Claim and other pleadings. Because of the liberal consumer protection nature of the statutes and the intent of Congress to protect consumers, it would be in the best interest of justice to protect Hampton's due process rights; and would not be a futile effort to allow her to amend the Claim rather than dismissing it with prejudice.

## **CONCLUSION**

Appellees are taking legal action they are not entitled to take using unfair and unconscionable means by filing false documents into the public records (i.e.committing a felony in the process of trying to collect a debt).

Hampton has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct," which easily satisfies her burden of pleading under the FDCPA. See *Ashcroft v. Iqbal*, 129 S.Ct. at 1950. Plaintiff's claims should therefore have survived dismissal. Since the majority of the violations in the claim were not addressed by the MDFL, consumer deserves to know the deficiencies related to all of her claim, not just a portion and the chance to provide evidence to support it.

This consumer also has very unusual circumstances, since she is elderly, disabled and has medical orders not to travel. The law itself (28 USC §1404a) was revised in 2011 to read "with consent of all parties" at the end, which has been very conveniently left out of all of the statements from the appellees. Hampton is domiciled in Georgia, all of the violations occurred in Georgia and according to Congress 15 USC §1692i consumers should only sue or be sued where they live.

Appellees have committed a tortious act by intentionally inflicting emotional distress on the plaintiff. Nutter and Wolfe have acted intentionally and recklessly by continuing debt collection when they know they have no right to collect a debt from Hampton without a contract with Nutter. Defendants have committed unfair, unconscionable and deceptive acts, not only in violation of 15 USC §1692, but also in violation of unfair and deceptive practices toward the elderly and disabled,

O.C.G.A §10-1-851. The plaintiff is disabled and the defendant's conduct of reckless, intentional, and outrageous debt collection has altered her physical, mental and emotional state creating the need for more medical attention.

Again Hampton is stating that she will pay this debt today, IF she is legally liable for the debt, and if appellees will simply produce the original loan level documentation along with the original note (or the proceeds equal to the lost note) to prove that there is a valid debt owed and to whom it is legally owed.

All rights reserved, without recourse

Dated July 11, 2016

_____

Sherrie Hampton-Muhamed
4329 Donerail Dr.
Snellville, Georgia [30039]
(404) 786-6291
cmrsinc@comcast.net

# CERTIFICATE OF COMPLIANCE

Certificate of compliance with type-volume limitations, typeface requirements and type style requirements.

1. This brief complies with the type-volume limitation of Fed.R.App.P. Rule 32(a)(7)(B) and (C) because:

   A. This brief contains 8,979 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii) or

   B. This Brief uses a monospaced typeface and contains 832 lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a) (7) (B) (iii)

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) And the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using MS Word version 10.0 in 14 point size Times New Roman style.


Dated:  July 11, 2016

                                        _____

                                        Sherrie Hampton-Muhamed
                                        4329 Donerail Dr.
                                        Snellville, Georgia  [30039]
                                        (404) 786-6291
                                        cmrsinc@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Reply Brief was filed with the clerk of the U.S. Court of Appeals and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, and an additional and true and correct copy with First Class Postage prepaid, has been deposited in the U.S. Mail to those on service list below.

RUMBERGER, KIRK & CALDWELL, P.A.
Suzanne Barto Hill, Esquire, Florida Bar No. 0846694,
shill@rumberger.com
Kevin R. Gowen, II, Esquire, Florida Bar No. 0900621,
kgowen@rumberger.com
Candice Messersmith, Esquire
Post Office Box 1873,
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133    *Priority Mail* # 9505 5000-3323-6193-0005-10

**UNITED STATES DISTRICT COURT OF APPEALS FOR THE ELEVENTH CIRCUIT,**
**56 Forsyth St. N.W.,**
**Atlanta, GA 30303**

And with the Clerk of Court through US Mail, Priority Mail # 9505-5000-3323-6193-0005-03 US, and not filed electronically as Plaintiff is excused from filing this document or thing electronically by Court order.

Dated: July 11, 2016

                                            _____
                                            Sherrie Hampton-Muhamed
                                            4329 Donerail Dr.
                                            Snellville, Georgia  [30039]
                                             (404) 786-6291
                                            cmrsinc@comcast.net

See, also, section 1392 of this title, which fixes venue of an action involving property in different districts in the same State.

## § 1404. Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c) A district court may order any civil action to be tried at any place within the division in which it is pending.

(d) Transfers from a district court of the United States to the District Court of Guam, the District Court for the Northern Mariana Islands, or the District Court of the Virgin Islands shall not be permitted under this section. As otherwise used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.

(June 25, 1948, ch. 646, 62 Stat. 937; Pub. L. 87–845, § 9, Oct. 18, 1962, 76A Stat. 699; Pub. L. 104–317, title VI, § 610(a), Oct. 19, 1996, 110 Stat. 3860; Pub. L. 112–63, title II, § 204, Dec. 7, 2011, 125 Stat. 764.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 119, 163 (Mar. 3, 1911, ch. 231, § 53, 36 Stat. 1103; Sept. 5, 1916, ch. 475, § 1, 39 Stat. 851).

Section consolidates sections 119 and 163 of title 28, U.S.C., 1940 ed., with necessary changes in phraseology and substance.

Section 119 of title 28, U.S.C., 1940 ed., related only to transfer of cases from one division to another on stipulation of the parties.

Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 62 S.Ct. 6, 314 U.S. 44, 86 L.Ed. 28, which was prosecuted under the Federal Employers' Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so.

Sections 143, 172, 177, and 183 of title 28, U.S.C., 1940 ed., relating to the district courts of Arizona, Montana, New Mexico, and Ohio, contained special provisions similar to subsection (b), applicable to those States. To establish uniformity, the general language of such subsection has been drafted and the special provisions of those sections omitted.

Subsection (b) is based upon section 163 of title 28, U.S.C., 1940 ed., which applied only to the district of Maine. This revised subsection extends to all judicial districts and permits transfer of cases between divisions. Criminal cases may be transferred pursuant to

Rules 18–21 of the new Federal Rules of Criminal Procedure, and the criminal provisions of said section 163 are therefore omitted.

### AMENDMENTS

2011—Subsec. (a). Pub. L. 112–63, § 204(1), inserted "or to any district or division to which all parties have consented" before period at end.

Subsec. (d). Pub. L. 112–63, § 204(2), substituted "Transfers from a district court of the United States to the District Court of Guam, the District Court for the Northern Mariana Islands, or the District Court of the Virgin Islands shall not be permitted under this section. As otherwise used in this section," for "As used in this section".

1996—Subsec. (d). Pub. L. 104–317 amended subsec. (d) generally. Prior to amendment, subsec. (d) read as follows: "As used in this section, 'district court' includes the United States District Court for the District of the Canal Zone; and 'district' includes the territorial jurisdiction of that court."

1962—Subsec. (d). Pub. L. 87–845 added subsec. (d).

### EFFECTIVE DATE OF 2011 AMENDMENT

Amendment by Pub. L. 112–63 effective upon the expiration of the 30-day period beginning on Dec. 7, 2011 and applicable to any action commenced in a United States district court on or after such effective date, and to any action removed from a State court to a United States district court that had been commenced, within the meaning of State law, on or after such effective date, see section 205 of Pub. L. 112–63, set out as an Effective Date note under section 1390 of this title.

### EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–317, title VI, § 610(b), Oct. 19, 1996, 110 Stat. 3861, provided that: "The amendments made by this section [amending this section and section 1406 of this title] apply to cases pending on the date of the enactment of this Act [Oct. 19, 1996] and to cases commenced on or after such date."

### EFFECTIVE DATE OF 1962 AMENDMENT

Amendment by Pub. L. 87–845 effective Jan. 2, 1963, see section 25 of Pub. L. 87–845, set out as a note under section 414 of this title.

## § 1405. Creation or alteration of district or division

Actions or proceedings pending at the time of the creation of a new district or division or transfer of a county or territory from one division or district to another may be tried in the district or division as if created at the institution of the action or proceeding, or in the district or division so created or to which the county or territory is so transferred as the parties shall serve or the court direct.

(June 25, 1948, ch. 646, 62 Stat. 937.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 121 (Mar. 3, 1911, ch. 231, § 59, 36 Stat. 1103).

Enforcement of liens in like circumstances is provided by section 1656 of this title.

Remainder of section 121 of title 28, U.S.C., 1940 ed., is incorporated in section 320 of revised title 18, Crimes and Criminal Procedure (H.R. 1600, 80th Cong.).

Changes were made in phraseology.

## § 1406. Cure or waiver of defects

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.



# TROUTMAN SANDERS

**Related Practices**

Consumer Financial
Protection Bureau
(CFPB)
Consumer Financial
Services
Financial Services
Litigation

**Advisory Sign Up**

REGISTER to receive
insight on legal
developments from
Troutman Sanders.

## News & Knowledge

**CFPB Intends to Extend Reach of Federal Debt
Collection Law to All Financial Institutions**

07.11.13

**David N. Anthony**

**Alan D. Wingfield**

**Paige S. Fitzgerald**

**Virginia Bell Flynn**

On July 10, 2013, all financial institutions that are
regulated under the Dodd-Frank Act and collect
debts, whether as original creditors or as legally-
defined debt collectors, were put on notice by the
CFPB that they are now subject to the requirements
of current federal debt collection law. In two
"bulletins" issued by the CFPB, the CFPB went a
long way toward eradicating decades of Fair Debt
Collection Practices Act (FDCPA) precedent, which
unambiguously holds that original creditors are not
debt collectors and, thus, are not subject to Federal
regulation under the FDCPA. The CFPB has taken
the position that its general authority to prevent
"unfair, deceptive or abusive acts or practices"
(UDAAP) applies to debt collection, and has
announced that the type of conduct barred under
UDAAP is analogous to conduct subject to
enforcement under the FDCPA.

Indeed, Director Richard Cordray stated that "these
bulletins make clear that *it doesn't matter who is
collecting the debt* – unfair, deceptive or abusive
practices are illegal." Based on this statement and
the CFPB's latest guidance, any original creditor,
while not explicitly subject to the FDCPA, therefore,
is essentially subject to FDCPA-like supervision and
examination by the CFPB.

Many financial institutions subject to the Dodd-
Frank Act collect their own debts and are not
subject to the FDCPA. With the CFPB's newest
declaration regarding non-FDCPA entities -- *i.e.,*
banks and other financial institutions within the
scope of the CFPB supervisory/enforcement
jurisdiction - the entire legal landscape of federal

**News**

- News Releases
- Articles &
  Publications
- Press Coverage

**Events**

- Firm Events
- Speaking
  Engagements
- Sponsored Events

regulation of debt collection has changed. Federal debt collection law now applies to all consumer debt collection activities conducted by any financial institution regulated by the Dodd-Frank Act.

## CFPB Bulletin 2013-07

The first of the two debt collection industry bulletins issued by the CFPB yesterday is primarily concerned with the prohibition of unfair, deceptive, or abusive acts or practices in the collection of consumer debts. The CFPB specifically provides that "[a]lthough the FDCPA's definition of 'debt collector' does not include some persons who collect consumer debt, all covered persons and service providers must refrain from committing [unfair, deceptive, or abusive acts or practices] in violation of the Dodd-Frank Act."

The CFPB also explains that it considers an act or practice to be "unfair" if it "causes or is likely to cause substantial injury to consumers," which can include acts that lead to emotional injuries. The CFPB enumerates several specific examples of UDAAP violations including:

- Collecting or assessing a debt not expressly authorized by the agreement or permitted by law (including interest, fees, and charges);
- Failing to post payments timely or properly;
- Taking possession of property without the legal right to do so;
- Revealing the consumer's debt, without the consumer's consent, to the consumer's employer and/or co-workers;
- Falsely representing the character, amount, or legal status of the debt;
- Misrepresenting that a debt collection communication is from an attorney;
- Misrepresenting whether information about a payment or non-payment would be furnished to a credit reporting agency;Misrepresenting to consumers that their debts would be waived or forgiven if they accepted a settlement offer; and
- Threatening any action that is not intended.

These concerns essentially replicate many of the requirements imposed upon debt collectors by the FDCPA and signal that the CFPB intends to transfer FDCPA requirements from the debt collector world onto original creditors through use of its UDAAP authority over original creditors.

## CFPB Bulletin 2013-08

In its second bulletin, the CFPB provides additional guidance regarding certain deceptive claims and representations that creditors, debt buyers and third-party debt collectors may make in the course of collecting debts in an effort to persuade consumers to pay. Again, this bulletin is directed not only at entities subject to the jurisdiction of the FDCPA but also at original creditors. The CFPB identified four problematic types of representations, which include statements regarding the relationship between:

- Paying debts in collection and improvements in a consumer's credit report;
- Paying debts in collection and improvements in a consumer's credit score;
- Paying debts in collection and improvements in a consumer's creditworthiness; or
- Paying debts in collection and the increased likelihood of a consumer receiving credit or more favorable credit terms from a lender.

The CFPB does explain that such representations are likely to be important to consumers and their future access to debt. As a result, the CFPB views these types of potentially deceptive claims as a matter of "significant concern." While these concerns are subject to FDCPA regulation, original creditors must now be explicitly mindful of them, based on the CFPB's guidance.

### Practical Implications

The CFPB appears to be setting a new standard through regulatory guidance: that is, original creditors should now view the FDCPA requirements as essentially being applicable to them.

### About Troutman Sanders

Troutman Sanders is an accomplished and experienced leader in providing litigation and regulatory advice to a broad spectrum of financial services institutions. Troutman Sanders' CFPB Team monitors the development and activities of the CFPB on its CFPB Report blog and also advises clients on CFPB and Dodd-Frank issues. Additionally, Troutman Sanders' Financial Services Litigation practice group has successfully litigated a wide variety of individual and class action litigation, as well as other federal and state consumer protection laws now under the umbrella of the CFPB. Finally, Troutman Sanders' White Collar and Government Investigations Practice Group has represented numerous financial institutions,